Joel B. Robbins, Esq. (011065)
Jesse M. Showalter, Esq. (026628)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
Fax: (602) 265-0267
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
*Attorneys for Plaintiff*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Lane, individually and on behalf of the statutory beneficiaries of S.L., and in her capacity as the Personal Representative of the Estate of S.L., <br><br> Plaintiff, <br><br> vs. <br><br> City of Mesa, a municipality; City of Chandler, a municipality; Michael Pezzelle, an individual; James Pollard, an individual; Hoapili Baker, an individual; Jalyn Bellows, an individual; William Jones, an individual; Brandon Ekren, an individual; Andrew Walag, an individual; Donald Rudd, an individual; and Garrett Dever, an individual, <br><br> Defendants. | No. 2:19-cv-00852-DJH <br><br> **PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> (Tort – Wrongful Death – Civil Rights) <br><br> (Jury Trial Demanded) |

Jennifer Lane, in her individual capacity and on behalf of the statutory beneficiaries of S.L., for her Second Amended Complaint ("SAC") against Defendants the City of Mesa, the City of Chandler, Michael Pezzelle, James Pollard, Hoapili Baker, Jalyn Bellows, William Jones, Brandon Ekren, Andrew Walag, Donald Rudd, and Garrett Dever, alleges as follows:

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PARTIES**

1.      S.L. was, at the time of her death on April 20, 2017, a 17-year-old resident of Maricopa County:



2.      Jennifer Lane is the surviving mother of S.L. and is a resident of Maricopa County.

3.      Jennifer Lane brings this action on her own behalf, on behalf of all statutory beneficiaries of S.L., and on behalf of the Estate of S.L., for which she is the Personal Representative.

4.      Defendant City of Mesa is a municipality and a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona. It is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

5.      Defendant City of Chandler is a municipality and political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona. It is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

6.      Defendant Michael Pezzelle is an individual and a citizen of Arizona.

7.      At all times alleged in the SAC, Defendant Michael Pezzelle was a Police Officer employed by the City of Mesa acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

1    8.    Defendant James Pollard is an individual and a citizen of Arizona.

2    9.    At all times alleged in the SAC, Defendant James Pollard was a Police Officer

3  employed by the City of Mesa acting within the course and scope of his employment, and

4  under color of state law. He is a "state actor" as that term is used under the jurisprudence of

5  42 U.S.C. § 1983.

6    10.    Defendant Hoapili Baker is an individual and a citizen of Arizona.

7    11.    At all times alleged in the SAC, Defendant Hoapili Baker was a Police Officer

8  employed by the City of Mesa acting within the course and scope of his employment, and

9  under color of state law. He is a "state actor" as that term is used under the jurisprudence of

10  42 U.S.C. § 1983.

11    12.    Defendant Andrew Walag is an individual and a citizen of Arizona.

12    13.    At all times alleged in the SAC, Defendant Andrew Walag was a Police

13  Officer employed by the City of Mesa acting within the course and scope of his employment,

14  and under color of state law. He is a "state actor" as that term is used under the jurisprudence

15  of 42 U.S.C. § 1983.

16    14.    Defendant Brandon Ekren is an individual and a citizen of Arizona.

17    15.    At all times alleged in the SAC, Defendant Brandon Ekren was a Police

18  Officer employed by the City of Mesa acting within the course and scope of his employment,

19  and under color of state law. He is a "state actor" as that term is used under the jurisprudence

20  of 42 U.S.C. § 1983.

21    16.    Defendant William Jones is an individual and a citizen of Arizona.

22    17.    At all times alleged in the SAC, Defendant William Jones was a Police Officer

23  employed by the City of Mesa acting within the course and scope of his employment, and

24  under color of state law. He is a "state actor" as that term is used under the jurisprudence of

25  42 U.S.C. § 1983.

26    18.    Defendant Jalyn Bellows is an individual and a citizen of Arizona.

27    19.    At all times alleged in the SAC, Defendant Jalyn Bellows was a Police

28  Sergeant employed by the City of Mesa acting within the course and scope of his

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax:   (602) 265-0267

employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

20. Defendant Donald Rudd is an individual and a citizen of Arizona.

21. At all times alleged in the SAC, Defendant Donald Rudd was a Police Lieutenant employed by the City of Mesa acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

22. Defendant Garrett Dever is an individual and a citizen of Arizona.

23. At all times alleged in the SAC, Defendant Garrett Dever was a Police Officer employed by the City of Chandler acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

24. In this SAC, Defendants Pezzelle, Pollard, Baker, Walag, Jones, Ekren, Rudd, Bellows, and Dever are referred to collectively as "the Officer Defendants."

**JURISDICTION AND VENUE**

25. The amount in controversy exceeds the jurisdictional limitations of this Court.

26. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim pursuant to A.R.S. § 12-821.01 upon Defendants City of Mesa and City of on or about October 16, 2017. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

27. The events that form the basis of this SAC occurred on or about April 20, 2017, in Maricopa County.

28. Venue is proper in the Superior Court in and for Maricopa County.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:  (602) 265-0267

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
## THE PEQUEÑO INVESTIGATION

29.    The East Valley Task Force (hereinafter "the Task Force") is a non-jural entity that is a joint venture between the City of Mesa, the City of Tempe, the City of Chandler, the Pinal County Sheriff's Office, and the United States Marshals Service.

30.    The Task Force includes law enforcement officers from the City of Mesa, the City of Tempe, the City of Chandler, the Pinal County Sheriff's Office, and the United States Marshals Service.

31.    All Defendants were participating in the Task Force.

32.    On April 20, 2017, the Task Force was pursuing and surveilling Brandon Pequeño.

33.    Prior to April 20, 2017, Pequeño was being investigated for a probation violation.

34.    On April 20, 2017, Pequeño assaulted his girlfriend, Frances Gomez, and attempted to drag her into her 2017 Toyota Corolla (the "Toyota Corolla").

35.    A bystander who witnessed Pequeño's assault attempted to intervene, and Pequeño brandished a knife at him.

36.    The bystander called 9-1-1.

37.    Pequeño left the scene in the Toyota Corolla that belonged to Frances Gomez before he could be stopped by police.

38.    After the assault on Frances Gomez, Brandon Pequeño drove the Toyota Corolla to the residence of S.L. to meet Damien Sandoval Rosa.

39.    Pequeño picked up S.L. and Damien Sandoval Rosa from S.L.'s residence in West Phoenix and drove to the apartment complex at 5220 West Northern Avenue in Glendale, Arizona (the "Apartments") where Damien lived with his brother.

40.    Neither S.L. nor Damien were aware that Pequeño was wanted by the police, being surveilled by the police, or being pursued by the police.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

41.     The Officer Defendants were able to track Brandon Pequeño to the Apartments.

42.     Defendant Walag observed the Toyota Corolla parked in the north lot of the Apartments, and observed Brandon Pequeño, S.L., and Damien Sandoval Rosa near the Toyota Corolla.

43.     S.L. and Damien entered apartment 1313 at the Apartments while Pequeño walked around the Apartments.

44.     Pequeño later joined S.L. and Damien in apartment 1313.

45.     After spending some time in the apartment, Pequeño, S.L., and Damien returned to the Toyota Corolla.

46.     Pequeño took the driver's seat, Damien took the front passenger seat, and S.L. sat in the back seat.

47.     Pequeño, Damien, and S.L. did not know it, but at this point they were completely surrounded by undercover members of the Task Force, including the Officer Defendants.

48.     The Officer Defendants had taken up positions throughout the Apartments in unmarked vehicles.

49.     All of the Officer Defendants either saw, or learned from other Officer Defendants, that Pequeño, Damien, and S.L. returned to, and entered the Toyota Corolla.

50.     The Officer Defendants knew that Pequeño was driving the Toyota Corolla and that an unknown male (Damien) was in the front passenger seat, and an unknown female (S.L.) was in the rear passenger seat.

51.     The Officer Defendants were not aware of any information that would lead a reasonable officer to believe that S.L. had committed any crimes.

52.     The Officer Defendants were not aware of any facts or information that would lead a reasonable officer to believe that it was necessary to use force of any kind against S.L.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

## THE VEHICLE ASSAULT

53.     The Officer Defendants were not aware of any specific exigent or emergent circumstances that justified seizing not only Pequeño, but S.L. and Damien as well.

54.     While Pequeño, Damien, and S.L. were in apartment 1313, the Officer Defendants deliberated about how to seize Pequeño.

55.     The Officer Defendants had more than thirty minutes to deliberate about whether or not to seize Pequeño.

56.     The Officer Defendants had more than thirty minutes to deliberate about how to seize Pequeño.

57.     Defendant Pezzelle told the Officer Defendants that Pequeño had a firearm and that any attempt to arrest him would result in a shootout.

58.     Thus, the Defendant Officers knew that if they attempted to seize Pequeño, S.L., and Damien in the Toyota Corolla, S.L. and Damien were likely to be injured in the resulting shootout.

59.     Despite knowledge of the risks to S.L., the Defendant Officers made a conscious decision to ignore those risks.

60.     The Defendant Officers made a conscious, knowing, and deliberate decision to attempt to seize Pequeño, Damien, and S.L. in the Toyota Corolla by the use of force.

61.     The Defendant Officers made a conscious, knowing, and deliberate decision to seize Pequeño, Damien, and S.L. using tactics that increased the risks to S.L.

62.     The Defendant Officers decided to seize Pequeño, Damien, and S.L. in the Toyota Corolla using a technique known as a "Vehicle Assault" or "Vehicle Containment."

63.     A Vehicle Assault is a dynamic and violent police tactic in which police suddenly and without warning ram and box in a subject vehicle from all four sides, so that the subject vehicle and its occupants are seized and immobilized.

64.     In a Vehicle Assault, police position unmarked vehicles in front of, and in back of, a subject vehicle. The Vehicle Assault is initiated by having one or both of these vehicles ram the subject vehicle.

ROBBINS & CURTIN, P.L.L.C.

301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

65.     After the Vehicle Assault is initiated, additional police vehicles ram or box in the subject vehicle on each side such that the doors of the subject vehicle cannot be opened, and the occupants are trapped within.

66.     The Defendants knew that a Vehicle Assault is an intentional car crash.

67.     The Defendants knew that Vehicle Assaults should not be attempted on vehicles containing occupants who are not suspected of any crime.

68.     The Defendants knew that the forceful and violent nature of Vehicle Assaults results in chaos and confusion.

69.     The Defendants knew that the forceful and violent nature of Vehicle Assaults actually increases the likelihood that police will use deadly force.

70.     All of the Officer Defendants decided and agreed to seize Pequeño, S.L., and Damien in the Toyota Corolla using the Vehicle Assault tactic.

71.     All of the Officer Defendants were aware of Defendant Pezzelle's information that any attempt to seize Pequeño would result in a shootout when they agreed to seize Pequeño, Damien, and S.L. in the Vehicle Assault.

72.     All of the Officer Defendants knew that the Vehicle Assault tactic would result in trapping S.L. in the Toyota Corolla while the shootout occurred.

73.     All of the Officer Defendants knew that the Vehicle Assault tactic would result in violent vehicle collisions.

74.     All of the Officer Defendants knew that the Vehicle Assault tactic would also result in a chaotic and dynamic scene.

75.     The Officer Defendants knew that there was no immediate exigency that justified trapping S.L. in the Toyota Corolla for the shootout.

76.     The Officer Defendants knew that they could wait until Pequeño was alone before attempting to seize or arrest him.

77.     All of the Officer Defendants had the ability to call off the Vehicle Assault or to intervene to prevent it from occurring.

78.     The Officer Defendants callously and recklessly disregarded the risks that their actions posed to S.L. when they decided to participate in the Vehicle Assault.

79.     All of the Officer Defendants actively participated in the Vehicle Assault, either by planning the Vehicle Assault, by driving vehicles that participated in the Vehicle Assault, or by providing covering fire during the Vehicle Assault.

80.     Defendants Rudd and Bellows were supervisors responsible for supervising the actions of Defendants Pezzelle, Pollard, Baker, Ekren, Dever, Walag, and Jones.

81.     Defendants Rudd and Bellows agreed to and approved the Vehicle Assault plan.

82.     Defendants Rudd and Bellows, and the other Officer Defendants, failed to create an agreed upon plan regarding safely addressing the occupants of the Toyota Corolla once the Vehicle Assault was initiated.

83.     Defendants Rudd and Bellows, and the other Officer Defendants, failed to create an agreed upon plan regarding communications between officers and the occupants of the Toyota Corolla once the Vehicle Assault was initiated.

84.     Defendants Rudd and Bellows, and the other Officer Defendants, failed to create an agreed upon plan regarding communications between the officers once the Vehicle Assault was initiated.

85.     Defendants Rudd and Bellows, and the other Officer Defendants, failed to create an agreed upon plan regarding use of force once the Vehicle Assault was initiated.

86.     When Pequeño attempted to drive the vehicle out of the Apartment parking lot, an unmarked Dodge Ram police truck driven by Defendant Dever was stopped at the Apartment parking lot exit, blocking the Toyota Corolla's exit.

87.     Pequeño stopped the Toyota Corolla behind the Dodge Ram police truck.

88.     Because he was positioned immediately in front of the Toyota Corolla, Defendant Dever was responsible for initiating the Vehicle Assault.

89.     Defendant Dever also had the ability to abort the Vehicle Assault.

90.     Defendant Dever made a conscious decision to initiate the Vehicle Assault.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

1    91.    Defendant Dever initiated the Vehicle Assault by shifting his Dodge Ram

2    truck into reverse and ramming the front of the Toyota Corolla.

3    92.    By slamming into the Toyota Corolla, Defendant Dever seized the occupants

4    of the Toyota Corolla, including S.L.

5    93.    After Defendant Dever initiated the Vehicle Assault, a truck driven by

6    Defendant Pollard pulled up behind the Toyota Corolla to within several inches of the

7    Toyota Corolla's bumper.

8    94.    Defendant Ekren drove his Dodge Ram truck into assault position on the driver

9    side of the Toyota Corolla. Defendant Ekren used the Dodge Ram truck to strike the driver

10   side of the Toyota Corolla and stopped in such a way that the driver side doors of the Toyota

11   Corolla could not be opened.

12   95.    Defendant Walag drove his Toyota 4Runner into assault position on the

13   passenger side of the Toyota Corolla such that the 4Runner prevented the passenger side

14   doors from opening.

15   96.    The four police vehicles immobilized the Toyota Corolla and seized its

16   occupants, including S.L.

17   97.    The four police vehicles made it impossible for the Toyota Corolla to escape

18   or to be used as a weapon.

19   98.    In carrying out the Vehicle Assault, the Officer Defendants were in unmarked

20   vehicles and were not recognizable as police officers.

21   99.    In carrying out the Vehicle Assault, the Officer Defendants knowingly and

22   intentionally trapped S.L. in the Toyota Corolla for what they expected and believed would

23   be a shootout.

24   100.   In response to the Vehicle Assault, Pequeño revved the engine of the Toyota

25   Corolla a single time.

26   101.   After revving the engine, Pequeño shifted the Toyota Corolla into park.

27   **THE SHOOTING**

28   102.   Within seconds of the Vehicle Assault maneuver, the shootout began.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

103.    Pequeño did not have a firearm.

104.    S.L. did not have a firearm.

105.    Damien did not have a firearm.

106.    Pequeño did not make any threatening movements.

107.    S.L. did not make any threatening movements.

108.    Damien did not make any threatening movements.

109.    Pequeño did not pose a threat to any police officers or others.

110.    Damien did not pose a threat to any police officers or others.

111.    S.L. did not pose a threat to any police officers or others.

112.    Pequeño was "contained" in the Toyota Corolla.

113.    Damien was "contained" in the Toyota Corolla.

114.    S.L. was "contained" in the Toyota Corolla.

115.    Immediately after the Vehicle Assault was executed, Defendant Jones took a position beside the Silver Dodge Ram truck operated by Defendant Ekren.

116.    Defendant Jones was using the engine block of the Silver Dodge Ram truck as "cover."

117.    Defendant Jones was on the driver side of the Toyota Corolla and slightly to the rear of the driver seat.

118.    Defendant Jones knew that the Toyota Corolla had been immobilized and contained.

119.    Defendant Jones was armed with a shotgun.

120.    Defendant Jones never saw a gun, or weapon, or any other threat that justified firing less lethal shotgun rounds into the Toyota Corolla.

121.    Defendant Jones fired three less lethal shotgun rounds into the front driver side window of the Toyota Corolla without provocation.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:  (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax: (602) 265-0267

122.   Defendant Jones fired these rounds in order "to overwhelm them, get into their OODA[1] loop as you'd call it." Defendant Jones further explained that he fired the shots "to disrupt so that – one, to get – gain compliance."

123.   Defendant Jones also justified shooting into the Toyota Corolla because "I needed to get the window open so he could hear us."

124.   Defendant Jones began shooting into the Toyota Corolla before any of the Officer Defendants had identified themselves as police and without any warning.

125.   At the time that Defendant Jones fired into the Toyota Corolla, the Officer Defendants had not yet given commands or warnings to the occupants of the vehicle.

126.   As Defendant Jones began firing, Defendant Pezzelle, Defendant Pollard, and Defendant Baker began to simultaneously fire their side arms.

127.   Defendant Pollard was directly behind the Toyota Corolla.

128.   Defendant Pollard was standing on the side of the Toyota 4Runner he was operating.

129.   From his position, Defendant Pollard could not see what Pequeño was doing.

130.   Defendant Pollard never saw a gun, or weapon, or any other threat that justified using deadly force against the occupants of the Toyota Corolla.

131.   Defendant Pollard was armed with a .45 Caliber, Sig Sauer 1911, with a seven-round magazine capacity.

132.   Defendant Pollard fired three or more shots into the Toyota Corolla without provocation.

133.   Defendant Baker had parked his vehicle behind the police vehicles that had rammed and boxed in the Toyota Corolla.

134.   After the Vehicle Assault was executed, Defendant Baker exited his vehicle and began walking south toward the position where Defendant Jones was located.

---

1.   The "OODA Loop" is a military term that refers to the cycle of "observe, orient, decide and act." The term was developed by Air Force Colonel John Boyd for use in combat operations.

135.     As Defendant Baker approached Defendant Jones' location, Defendant Baker could hear shots being fired.

136.     Defendant Baker took a position beside Defendant Jones to the left rear of the Toyota Corolla.

137.     Defendant Baker was using the engine block of Defendant Ekren's Silver Dodge Ram as cover.

138.     From his position, his view of Pequeño was obscured by the darkly tinted windows of the Toyota Corolla, the front driver seat, and the A-pillar.

139.     Defendant Baker never saw a gun, or weapon, or any other threat that justified using deadly force against the occupants of the Toyota Corolla.

140.     Defendant Baker was armed with a .40 caliber, Glock 22.

141.     Defendant Baker fired one or more shots into the driver side window of the Toyota Corolla without justification.

142.     Defendant Baker was the last Defendant to fire into the Toyota Corolla.

143.     Defendant Pezzelle was located to the right rear of the Toyota Corolla.

144.     Defendant Pezzelle was using the engine block of Detective Walag's 4Runner as cover.

145.     Defendant Pezzelle was behind Pequeño, and Defendant Pezzelle did not have a clear view of Pequeño.

146.     Defendant Pezzelle's view of Pequeño was obstructed by the darkly tinted windows of the Toyota Corolla, the A-pillar of the Toyota Corolla, and the front seats of the Toyota Corolla.

147.     Defendant Pezzelle's view of Pequeño was also obstructed by Damien and by S.L.

148.     Defendant Pezzelle never saw a gun, or weapon, or any other threat that justified firing rounds into the Toyota Corolla.

149.     Defendant Pezzelle knew that S.L. was unarmed.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax:   (602) 265-0267

150.   Defendant Pezzelle did not have any reasonably trustworthy information to suggest that S.L. had committed any crime.

151.   Defendant Pezzelle did not have any reasonably trustworthy information to believe that S.L. was attempting to escape, evade, or avoid arrest.

152.   S.L. did not do anything that threatened Pezzelle or any other officer.

153.   Defendant Pezzelle knew that S.L. was behind the rear passenger-side window of the Toyota Corolla.

154.   Defendant Pezzelle was armed with a .45 Caliber, Sig Sauer 1911, with a seven-round magazine capacity.

155.   Defendant Pezzelle intentionally aimed his .45 Caliber Sig Sauer at the rear passenger-side window of the Toyota Corolla, where he knew that S.L. was sitting.

156.   Defendant Pezzelle intentionally fired five rounds from his .45 Caliber Sig Sauer at the rear passenger-side window of the Toyota Corolla, where he knew that S.L. was sitting.



157. Defendant Pezzelle shot S.L. in the head.

158. After the shooting, S.L. was still alive and breathing.

159. S.L. was transported to a hospital by paramedics.

160. S.L. died on April 21, 2017, from the gunshot wound inflicted by Defendant Pezzelle.

## DEFENDANT CITY OF MESA

161. Defendant City of Mesa is responsible for training and supervising Mesa Police Officers regarding the use of force, including deadly force.

162. Defendant City of Mesa has failed to properly train and supervise its police officers regarding the use of force.

163. The City of Mesa has a policy, custom, or practice of training officers to "escalate" situations. That is, to use more force than is reasonably necessary or appropriate to respond to situations.

164. The City of Mesa knows that its policy, custom, or practice of training officers to "escalate" situations results in unreasonable uses of force.

165. The City of Mesa's policy, custom, or practice of training officers to "escalate" situations increases the incidence of uses of force, including the incidence of deadly force.

166. As a result of the City of Mesa's improper training, between 2014 and the 2017 shooting of S.L., Defendant City of Mesa had an unusually high rate of police shootings, including shootings that resulted in death.

167. In 2014, City of Mesa Police Officers were involved in at least five (5) shootings.

168. In 2015, City of Mesa Police Officers were involved in at least seven (7) shootings.

169. In 2016, City of Mesa Police Officers were involved in at least eight (8) shootings.

170. The rates of shooting involving City of Mesa Police Officers are disproportionate to Mesa's population.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

171.   The rates of shooting involving City of Mesa Police Officers are disproportionate to Mesa's violent crime rate.

172.   The rates of shooting involving City of Mesa Police Officers is the result of improper training and encouragement that officers use deadly force even in situations where it is not appropriate.

173.   The City of Mesa has a policy, custom, or practice of delaying and slowing down administrative investigations of shootings.

174.   The purpose of the City of Mesa's policy or practice of delaying and slowing down administrative investigations of police shootings is to prevent the public and the victims of police shootings from learning about the real facts involved in the shootings.

175.   The purpose of the City of Mesa's policy, custom, or practice of delaying and slowing down administrative investigations of police shootings is to prevent the victims of police shootings from bringing lawsuits against the City of Mesa and its employees related to police shootings.

176.   The City of Mesa's policy, custom, or practice of delaying and slowing down administrative investigations of shootings and other uses of force encourages the City of Mesa's officers to use deadly force when it is not reasonable.

177.   The average officer at the City of Mesa never uses deadly force.

178.   Prior to the shooting of S.L., the City of Mesa knew that Defendant Pezzelle had used deadly force on four (4) separate occasions.

179.   Prior to the shooting of S.L., the City of Mesa knew that Defendant Pollard had previously used deadly force six (6) times.

180.   Pursuant to its policies, customs, and practices, the City of Mesa failed to conduct full, complete, and timely internal investigations of Pezzelle and Pollard's prior shootings.

181.   Through its policies, customs, and practices, the City of Mesa created a culture of impunity regarding police uses of force, including deadly force.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax:   (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax:  (602) 265-0267

182.   The City of Mesa has a policy, custom, or practice of utilizing Vehicle Assaults in situations in which innocent civilians such as S.L. are passengers in the target vehicle.

183.   The City of Mesa knows that its policy, custom, or practice of utilizing Vehicle Assaults in situations in which innocent civilians are passengers in the target vehicle puts such civilians at serious risk of death or bodily injury.

184.   The City of Mesa has failed to adopt and promulgate a written policy regarding the need to protect innocent civilians during Vehicle Assaults, and to limit such assaults against vehicles containing innocent civilians.

185.   The City of Mesa knew that the Defendant Officers engaged in as many as one or two Vehicle Assaults or Vehicle Containments per week.

186.   The City of Mesa knew that Vehicle Assaults and Vehicle Containments are violent seizures and uses of force.

187.   The City of Mesa knew that Vehicle Assaults and Vehicle Containments often result in serious injuries to the occupants of vehicles.

188.   The City of Mesa knew that because of the dangers posed to members of the public, including the occupants of vehicles seized using the Vehicle Assault or Vehicle Containment tactic, there was an obvious need to develop policies and training regarding the use of the tactic.

189.   Despite knowledge of the obvious need for policies and training regarding Vehicle Assaults, the City of Mesa failed to develop policies regarding the use of Vehicle Assaults.

190.   Despite knowledge of the obvious need for policies and training regarding Vehicle Assaults, the City of Mesa failed to develop policies to protect non-suspects during Vehicle Assaults, including policies that would have prohibited the use of Vehicle Assaults when cars were occupied by passengers who were not suspected of any crime.

1    **DEFENDANT CITY OF CHANDLER**

2    191.    The City of Chandler is responsible for the training and supervision of its

3    police officers, including training regarding searches, seizures, and uses of force.

4    192.    The City of Chandler has a policy, custom, or practice of utilizing Vehicle

5    Assaults in situations in which innocent civilians such as S.L. are passengers in the target

6    vehicle.

7    193.    The City of Chandler knows that its policy, custom, or practice of utilizing

8    Vehicle Assaults in situations in which innocent civilians are passengers in the target vehicle

9    puts such civilians at serious risk of death or bodily injury.

10   194.    The City of Chandler has failed to adopt and promulgate a written policy

11   regarding the need to protect innocent civilians during Vehicle Assaults, and to limit such

12   assaults against vehicles containing innocent civilians.

13   195.    The City of Chandler knew that the Defendant Officers engaged in as many as

14   one or two Vehicle Assaults or Vehicle Containments per week.

15   196.    The City of Chandler knew that Vehicle Assaults and Vehicle Containments

16   are violent seizures and uses of force.

17   197.    The City of Chandler knew that Vehicle Assaults and Vehicle Containments

18   often result in serious injuries to the occupants of vehicles.

19   198.    The City of Chandler knew that because of the dangers posed to members of

20   the public, including the occupants of vehicles seized using the Vehicle Assault or Vehicle

21   Containment tactic, there was an obvious need to develop policies and training regarding the

22   use of the tactic.

23   199.    Despite knowledge of the obvious need for policies and training regarding

24   Vehicle Assaults, the City of Chandler failed to develop policies regarding the use of Vehicle

25   Assaults.

26   200.    Despite knowledge of the obvious need for policies and training regarding

27   Vehicle Assaults, the City of Chandler failed to develop policies to protect non-suspects

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

during Vehicle Assaults, including policies that would have prohibited the use of Vehicle Assaults when cars were occupied by passengers who were not suspected of any crime.

### CLAIMS BROUGHT UNDER ARIZONA STATE LAW

### COUNT ONE
### Wrongful Death
### (City of Mesa and City of Chandler)

201.    The foregoing paragraphs are incorporated as if fully set forth herein.

202.    At all relevant times, Defendants Pollard, Pezzelle, Baker, Ekren, Walag, Jones, Rudd, and Bellows were acting in the course and scope of their employment for Defendant City of Mesa. Defendants Pollard, Pezzelle, Baker, Ekren, Walag, Jones, Rudd, and Bellows assaulted and battered S.L.

203.    Defendants Pollard, Pezzelle, Baker, Ekren, Walag, Jones, Rudd, and Bellows intentionally caused harmful or offensive contact to S.L. by shooting and killing her.

204.    The assault and battery was not justified.

205.    The City of Mesa ratified the assault and battery of Defendants Pollard, Pezzelle, Baker, Ekren, Walag, Jones, Rudd, and Bellows.

206.    The assault and battery was not justified and led to S.L.'s death.

207.    At all relevant times, Defendant Dever was an employee of the City of Chandler and was acting in the course and scope of his employment.

208.    Defendant Dever assaulted and battered S.L.

209.    Defendant Dever intentionally caused harmful or offensive contact to S.L. by ramming his vehicle into the Toyota Corolla that she occupied without justification.

210.    Plaintiff is entitled to damages.

211.    Defendants City of Mesa and City of Chandler owe a duty of care to members of the public with whom they come into contact and/or investigate, including S.L.

212.    Defendants City of Mesa and the City of Chandler breached this duty by failing to adequately supervise their officers in the Task Force.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

213.   Defendants City of Mesa and City of Chandler breached this duty by failing to adequately train their officers with respect to the pursuit of suspects, the seizure of suspects, and the risks of using force in making seizures.

214.    Defendants City of Mesa and City of Chandler breached this duty by failing to adopt adequate and reasonable policies and training with respect to the pursuit of suspects, high risk stops, Vehicle Assaults, Vehicle Containments, seizure of suspects, seizure of those occupying vehicles with suspects, and the risks of using force.

215.   As a result of these breaches, Defendants City of Mesa and City of Chandler caused S.L.'s death.

216.   Defendants City of Mesa and City of Chandler and their officers and employees that participated in the Task Force acted in concert with each other or pursuant to a common design.

217.   Defendants City of Mesa and City of Chandler and their officers and employees that participated in the Task Force gave substantial assistance or encouragement to Defendants Pollard, Pezzelle, and Baker.

218.   Defendants City of Mesa and City of Chandler and their officers and employees that participated in the Task Force had the ability to correct, control, train, monitor, and restrain Officers Pollard, Pezzelle, and Baker.

219.   Defendants City of Mesa and City of Chandler and their officers and employees that participated in the Task Force failed to use reasonable care and recklessly disregarded obvious risks of harm to S.L.

220.   Defendants City of Mesa and City of Chandler and their officers and employees caused the death of S.L. by their failures to use reasonable care and reckless disregard for the obvious risks of harm to S.L.

221.   Defendants City of Mesa and City of Chandler are vicariously liable for the conduct of their employees for causing S.L.'s death.

222.   As a direct result of Defendants City of Mesa and City of Chandler's negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, S.L. was

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax:   (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

killed, and Plaintiff and all statutory beneficiaries of S.L. sustained damages, including pain and suffering, grief, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

223.  Employees of the City of Mesa and City of Chandler shot S.L. without justification and their actions and inaction amount to death by negligence, gross negligence, reckless disregard, and/or murder.

224.  Defendants City of Mesa and City of Chandler and their officers and employees that participated in the Task Force acted in concert with each other or pursuant to a common design and/or gave substantial assistance or encouragement to that design and are therefore liable for S.L.'s death.

225.  If S.L.'s death had not ensued, she would have been entitled to maintain an action to recover damages for Defendants City of Mesa and City of Chandler's conduct.

226.  Pursuant to A.R.S. § 12-611, Defendants City of Mesa and City of Chandler are liable to S.L.'s statutory beneficiaries for S.L.'s and Plaintiff's claims and damages.

227.  Pursuant to A.R.S. § 12-612(a), Jennifer Lane, as surviving parent, is entitled to bring this action for damages.

228.  Plaintiff is entitled to, at a minimum, compensation for the loss of love, affection, companionship, care, protection, and guidance since S.L.'s death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future; for the reasonable expenses of funeral and burial; for the reasonable expenses of necessary medical care and services for the injury that resulted in the death; and for other related damages.

229.  Pursuant to the theory of *respondeat superior*, Defendants City of Mesa and City of Chandler are responsible for the conduct of their officers and employees and are liable to Plaintiff for the damages resulting from their conduct.

230.  Defendants City of Mesa and City of Chandler are responsible for the training and supervision of their officers and employees and are liable for the acceptance and

ratification of the conduct of the officers, as complained of herein, as being consistent with their customs, practices, and policies.

231. Plaintiff is therefore entitled to recover damages from Defendants City of Mesa and City of Chandler for all claims arising from the actions of their officers resulting in the death of S.L.

232. Through their officers and employees, the City of Mesa and the City of Chandler were acting in concert and participating in a joint enterprise for their mutual benefit.

233. The actions of the City of Mesa and the City of Chandler officers were in furtherance of their joint enterprise.

234. Each officer was an integral participant in the Vehicle Assault that resulted in the death of S.L.

235. Defendants City of Mesa and City of Chandler are jointly and severally liable for all claims arising from the actions of their officers that resulted in S.L.'s death.

### CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983

### COUNT TWO
#### Violation of 4th Amendment Right
#### To Be Free from Unlawful Seizures and Excessive Force
#### (The Officer Defendants)

236. The foregoing paragraphs are incorporated as if fully set forth herein.

237. S.L. had a 4th Amendment Right to be free from unlawful searches and seizures and from excessive force.

238. The Officer Defendants violated S.L.'s 4th Amendment Rights when, acting in concert and pursuant to their agreement, they used police vehicles to ram the Toyota Corolla that she was in.

239. The Officer Defendants violated S.L.'s 4th Amendment Rights when, acting in concert and pursuant to their agreement, they used police vehicles to trap S.L. inside the Toyota Corolla.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax: (602) 265-0267

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

240.     Defendants Jones, Pollard, Baker, and Pezzelle violated S.L.'s 4th Amendment Rights when they began firing shotgun and handgun rounds into the Toyota Corolla.

241.     Defendant Pezzelle violated S.L.'s 4th Amendment Rights when he aimed his .45 Caliber Sig Sauer firearm at the rear passenger window of the Toyota Corolla where he knew that S.L. was sitting.

242.     Defendant Pezzelle violated S.L.'s 4th Amendment Rights when he fired five rounds into the rear passenger window of the Toyota Corolla where he knew that S.L. was sitting.

243.     Defendant Pezzelle violated S.L.'s 4th Amendment Rights when one of his bullets struck her and caused her death.

244.     The 4th Amendment violations of all of the Officer Defendants were independent moving forces of S.L.'s death.

245.     Because the Officer Defendants' actions were done knowingly, intentionally, and maliciously, Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT THREE
### Violation of 14th Amendment Right to Due Process
### (The Officer Defendants)

246.     The foregoing paragraphs are incorporated as if fully set forth herein.

247.     The reckless, intentional, and deliberate acts and omissions of the Officer Defendants violated S.L.'s substantial due process rights to life and liberty.

248.     The Officer Defendants' actions were arbitrary and egregious, such that their conduct "shocks the conscious."

249.     The Officer Defendants' actions caused S.L. to be deprived of her life and her liberty.

250.     The Officer Defendants' actions were done knowingly, intentionally, and maliciously.

251.     Because the Officer Defendants' actions were done knowingly, intentionally, and maliciously, Plaintiff is entitled to recover compensatory and punitive damages.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

## COUNT FOUR
### Violation of 14th Amendment Right to Familial Society and Companionship
### (The Officer Defendants)

252.    The foregoing paragraphs are incorporated as if fully set forth herein.

253.    The reckless, intentional, and deliberate acts and omissions of the Officer Defendants were the direct legal cause of the deprivation of Jennifer Lane's constitutionally protected rights under the 14th Amendment to the care, companionship, and familial society of her daughter, S.L.

254.    The acts and omissions of the Officer Defendants were committed knowingly, intentionally, and maliciously, and for the purpose of causing harm.

## COUNT FIVE
### Monell Claims for Violation of 4th and 14th Amendment Rights
### (City of Mesa)

255.    The foregoing paragraphs are incorporated as if fully set forth herein.

256.    The City of Mesa was deliberately indifferent to the proper training of their employees, including the Officer Defendants, regarding the appropriate use of deadly or lethal force.

257.    The City of Mesa failed to train its officers regarding the proper use of deadly force.

258.    The City of Mesa had policies, customs or procedures that were deliberately indifferent to the rights of citizens to be free from deadly force.

259.    The City of Mesa created a culture of impunity that encouraged officers to use deadly force, by failing to investigate uses of force, by failing to discipline officers for uses of force, and by failing to retrain officers regarding uses of force.

260.    The City of Mesa was deliberately indifferent to the proper training of their employees, including the Officer Defendants, regarding the use of Vehicle Assault and Vehicle Containment tactics.

261.    The City of Mesa and the City of Chandler knew that Vehicle Containment and Vehicle Assault tactics create a serious and unreasonable risk of harm to vehicle occupants and members of the public.

262.    The City of Mesa and the City of Chandler knew that their officers were engaging in Vehicle Containment and Vehicle Assault tactics on a weekly basis.

263.    The City of Mesa and the City of Chandler failed to develop written policies regarding Vehicle Assault tactics.

264.    The City of Mesa was deliberately indifferent to the 4th and 14th Amendment rights of members of the public, including S.L. and Jennifer Lane.

265.    The City of Mesa's unconstitutional policies, customs, and procedures caused the deprivations of S.L.'s rights under the 4th and 14th Amendments to the United States Constitution.

266.    The City of Mesa's unconstitutional policies, customs, and procedures caused the deprivation of Jennifer Lane's rights to familial society and companionship under the 14th Amendment to the United States Constitution.

267.    The City of Mesa is liable for all damages arising from the constitutional violations it caused.

### COUNT SIX
### *Monell* Claims for Violation of 4th and 14th Amendment Rights
### (City of Chandler)

268.    The foregoing paragraphs are incorporated as if fully set forth herein.

269.    The City of Chandler was deliberately indifferent to the proper training of its employees, including the Officer Defendants, regarding the use of Vehicle Assault and Vehicle Containment tactics.

270.    The City of Chandler knew that Vehicle Assault and Vehicle Containment tactics create a serious and unreasonable risk of harm to vehicle occupants and members of the public.

271. The City of Chandler knew that its officers were engaging in Vehicle Containment and Vehicle Assault tactics on a weekly basis.

272. The City of Chandler failed to develop written policies regarding Vehicle Assault tactics.

273. The City of Chandler was deliberately indifferent to the 4th and 14th Amendment rights of members of the public, including S.L. and Jennifer Lane.

274. The City of Chandler's unconstitutional policies, customs, and procedures caused the deprivations of S.L.'s rights under the 4th and 14th Amendments to the United States Constitution.

275. The City of Chandler's unconstitutional policies, customs, and procedures caused the deprivation of Jennifer Lane's rights to familial society and companionship under the 14th Amendment to the United States Constitution.

276. The City of Chandler is liable for all damages arising from the constitutional violations it caused.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of S.L., pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses, hedonic damages, and for S.L.'s pre-death pain2 and suffering and for S.L.'s loss of life;

B. For special damages, including but not limited to the expenses of medical treatment, burial, and funeral;

C. For punitive damages against the Officer Defendants;

D. For pre- and post-judgment interest to the extent permitted by law;

---

2   Plaintiff seeks damages for S.L.'s pre-death pain and suffering solely under the Federal Claims. Plaintiff admits that pre-death pain and suffering can not be recovered for her claims brought under Arizona State's wrongful death statute.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

1    E.    For attorneys' fees and costs under 42 U.S.C. § 1988 to the fullest extent

2  permitted by law; and

3    F.    Such other relief as the Court deems just and proper.

4    RESPECTFULLY SUBMITTED: February 26, 2019

5                                                    ROBBINS & CURTIN, p.l.l.c.

6                                           By:    /s/ Jesse M. Showalter

7                                                  Joel B. Robbins
                                                   Jesse M. Showalter
8                                                  301 E. Bethany Home Road
                                                   Suite B-100
9                                                  Phoenix, Arizona 85012
10                                                 *Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax:   (602) 265-0267

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

John P. Torgenson, Esq.
Torgenson Law
333 W. Roosevelt Street
Phoenix, Arizona 85003
jtorgenson@torgensonlaw.com
*Co-Counsel for Plaintiff*

John T. Masterson, Esq.
Joseph J. Popolizio, Esq.
Justin M. Ackerman, Esq.
Jones, Skelton & Hochuli, P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
*Attorneys for Defendant City of Mesa*

J. Randall Jue, Esq.
Chandler City Attorney's Office
P.O. Box 4008, MS602
Chandler, Arizona 85244-4008
Randy.Jue@chandleraz.gov
*Attorneys for Defendant City of Chandler*

By: /s/ Julie W. Molera

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax: (602) 265-0267