Joel B. Robbins, Esq. (011065)
Anne E. Findling, Esq. (010871)
Jesse M. Showalter, Esq. (026628)
Lauren E. Channell, Esq. (033484)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
Fax: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com
jesse@robbinsandcurtin.com
lauren@robbinsandcurtin.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jennifer Lane, *et al.*, | No. 2:19-cv-00852-SMB |
| Plaintiffs, | |
| vs. | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: STATE LAW AFFIRMATIVE DEFENSES** |
| City of Mesa, *et al.*, | |
| Defendants. | **Oral Argument Requested** |

On April 20, 2017, Mesa and Chandler police officers ("the Officer Defendants") intentionally trapped S.L., a seventeen-year-old girl, in the back of a Toyota Corolla for a shootout. They used unmarked police trucks and SUVs to perform a vehicle containment, a police tactic that emphasizes "speed, surprise and violence of action." Without warning, Chandler officer Garrett Dever initiated the containment by reversing his truck into the front of the Corolla. At that signal, three other police trucks and SUVs boxed the car in. With the Corolla contained and its occupants trapped, Mesa officers began shooting into it at close range.

Mesa officer Michael Pezzelle—an expert marksman—fired five .45 caliber hollow point rounds into the rear passenger window of the Toyota. He was about twelve feet away. He knew that S.L. was sitting behind that window. His first shot struck her skull and entered her brain. She died from her injuries the following day.

Pezzelle testified that the Corolla was stopped and not moving when he shot S.L. He never saw a gun. And there was no gun in the car.

The Mesa and Chandler officers admit that they had no legal basis to use force against S.L. They did not suspect her of any crime. They did not believe she was armed. They had no reason to arrest her or use force of any kind against her.

The officers were after Brandon Pequeño, the driver of the vehicle. Pequeño was a felon. There were warrants out for his arrest for parole violation. Earlier that day, he had assaulted his girlfriend and stolen her car in Chandler. He had also flashed a knife at a bystander who tried to intervene. Brandon Pequeño was a criminal and a legitimate target for arrest. But no matter how bad Pequeño was, or might have been, nothing he did justifies the actions of the officers.

In hopes of avoiding liability for S.L.'s death, Mesa and Chandler want to blame her for their own wrongful actions. They have alleged various state law defenses to Plaintiff's wrongful death claim. All such claims fail as a matter of law because Mesa and Chandler cannot show that S.L.'s conduct justified the police actions or that S.L. "assumed the risk" of being trapped in a car and shot by police.

Plaintiff requests that the Court find, as a matter of law, that the City of Mesa and the City of Chandler (the "City Defendants") are not entitled to: (a) state law "criminal act," "intoxication," or "justification" defenses under A.R.S. §§ 12-711, 12-712, 12-716, or 13-404, *et seq.*; (b) to any of the immunities under A.R.S. § 12-820, *et seq.*, including the "felony immunity" at A.R.S. § 12-820.05, which the City Defendants have waived by failing to assert; and (c) to an assumption of the risk defense.

## I.     Factual and Procedural Background

### A.     The Officer Defendants perform surveillance on Brandon Pequeño.

On April 20, 2017, Mesa police officer Michael Pezzelle was contacted by a Chandler police officer and informed that Brandon Pequeño had assaulted and attempted to kidnap his girlfriend, Frances Gomez, threatened a bystander with a knife, and then fled the scene in Frances' 2017 Toyota Corolla. *See* Plaintiff's Separate Statement of Facts ("PSOF"), ¶ 5. Pezzelle was already aware of Pequeño. Ten days before, an adult probation officer had contacted him about two probation warrants for Pequeño and asked whether Pezzelle would assist in Pequeño's apprehension. The probation officer then sent Defendant Pezzelle an email that contained additional information about Pequeño, including his last known address and place of employment and that his ex-girlfriend, Frances Gomez, had reported that Pequeño had stolen her Glock .380 on March 27 or 28, 2017. PSOF, ¶ 1, 3-4. In the ten days following that initial contact, there is no evidence that Pezzelle made any attempt to locate or apprehend Pequeño.

Pezzelle was assigned to Mesa's "Violent Offenders Unit" ("VOU"). Lieutenant Donald Rudd was the commander of the VOU and Sgt. Jalyn Bellows was the supervising sergeant. Officers Hoapili Baker, James Pollard, William "Chip" Jones, Andrew Walag, and Brandon Ekren were also members of the VOU. The VOU often works with the East Valley Violent Offenders Task Force ("the Task Force"), a unit that includes officers from the City of Mesa, the City of Tempe, the City of Chandler, the Pinal County Sheriff's Office, and the United States Marshals Service. Chandler officer Garrett Dever was assigned to the Task Force. *See id.*, ¶ 2. At all times, Pezzelle was acting in his official capacity as a police officer for the City of Mesa.

In response to the April 20, 2017 call, Defendant Pezzelle drove to Frances' residence in Chandler to interview her. *Id.*, ¶ 6. Other officers were already present when he arrived, including Garret Dever. *Id.* There is a dispute of fact regarding what Frances Gomez told Pezzelle. Defendant Pezzelle claims that Frances told him that Pequeño was in possession of her Glock .380 handgun. According to Frances, Pezzelle repeatedly asked her whether

Pequeño still had her gun, and Frances repeatedly told Pezzelle that Pequeño had sold the gun and no longer had it. *Id.*, ¶ 7-8.

After assaulting Gomez, Pequeño drove her Toyota Corolla to the residence of 17-year-old S.L., where he picked up S.L. and her boyfriend, Damien Sandoval Rosa. *Id.*, ¶ 9. Pequeño then drove S.L. and Damien to an apartment complex at 5220 West Northern Avenue in Glendale where Damien lived with his brother. *Id.*, ¶ 10. The Officer Defendants used Pequeño's cellphone data to track him to the parking lot of the apartment complex. *Id.*, ¶ 11.

Defendant Walag observed Pequeño, S.L., and Damien get out of the Toyota Corolla, and he radioed to the other Officer Defendants that Pequeño was with an "orange haired" female and another Hispanic male. *Id.*, ¶ 12. S.L. and Damien entered the complex together and walked to apartment unit 1313. Pequeño walked the opposite direction around the complex but eventually met them at unit 1313 a couple minutes later. *Id.*, ¶ 14.

**B.     The Officer Defendants plan to apprehend Pequeño despite the known risks to the passengers in the Toyota Corolla.**

While Pequeño, S.L., and Damien were inside the apartment, additional Officer Defendants began to arrive at the apartment complex. The Officer Defendants were able to track the location of Pequeño's cellphone and could have followed him to another location. Defendant Bellows suggested a "vehicle containment" to seize Pequeño in the parking lot. *Id.*, ¶ 15.

A vehicle containment is an intentional car crash. It is a law enforcement tactic that emphasizes "speed, surprise and violence of action." *Id.*, ¶ 16. Police execute the vehicle containment by suddenly and without warning ramming and boxing in a subject vehicle from all four sides, so that the subject vehicle and its occupants are immediately trapped and immobilized. *Id.*

In a vehicle containment, police position unmarked vehicles in front of and behind the subject vehicle. The vehicle containment is initiated by having the "front block" vehicle drive in reverse and ram the front bumper of the subject vehicle. *Id.*, ¶ 17. The "rear block"

1  vehicle then moves into position by ramming the subject vehicle's back bumper. *Id.* Once
2  the "front block" and "rear block" vehicles are in position, the "left and right blocks" move
3  in and pin the sides of the subject vehicle so its doors cannot be opened and its occupants,
4  including innocent passengers, will be trapped inside. *Id.*

5  Mesa training on vehicle containments requires officers to conduct a briefing before
6  initiating a vehicle containment. One purpose of this briefing is to discuss ways to minimize
7  the risks to passengers in the vehicle being contained. *Id.*, ¶ 18. The Officer Defendants did
8  not conduct a briefing and none of them discussed the risks to passengers or how to minimize
9  those risks. *Id.*, ¶ 26.

10  Vehicle containments are reserved for apprehending felony suspects with a history of
11  violence or flight from law enforcement and should be one of the last methods rather than
12  the primary method of effecting an arrest. *Id.*, ¶ 19.

13  Regardless of what he actually learned from Frances Gomez, Defendant Pezzelle told
14  the other Officer Defendants that Pequeño had a stolen gun and would engage in a
15  "shootout" with any officer who tried to arrest him. *Id.*, ¶ 20.

16  Thus, the Officer Defendants knew that if they attempted to seize Pequeño while S.L.
17  and Damien were in the Toyota Corolla with him, S.L. and Damien would also be seized
18  and would be present for the anticipated shootout. *Id.*, ¶ 21. The Officer Defendants also
19  knew that S.L. would be trapped in the Corolla during the shootout. *Id.*, ¶ 22. Despite their
20  knowledge of the risks to S.L. and Damien, the Officer Defendants decided to use the
21  "vehicle containment." *Id.*, ¶ 23, 36.

22  The Officer Defendants were not aware of any exigent circumstances that justified
23  the seizure of S.L. and Damien in addition to Pequeño; however, Defendant Lieutenant Rudd
24  "gave the okay" for the vehicle containment to be executed and stated that he did not want
25  the Toyota Corolla to leave the apartment complex. *Id.*, ¶ 24. Defendant Jones advised that
26  he would be the front block if the Toyota Corolla used the exit onto 53rd Avenue, and
27  Defendant Dever agreed to perform the front block if the Toyota Corolla used the much
28  narrower exit onto Northern Avenue. *Id.*, ¶ 25.

In violation of their own training, the Officer Defendants did not conduct a briefing or discuss ways to avoid the risks of harm to the two passengers in the Toyota Corolla. *Id.*, ¶ 26. Nor did they make a plan for the use of force after the containment, who would provide use of force commands, and who would communicate with the people inside the Toyota Corolla. *Id.*, ¶ 26.

After some time in the apartment, Pequeño, S.L., and Damien returned to the parking lot and got into the Corolla. Pequeño took the driver's seat; Damien took the front passenger seat; and S.L. sat in the backseat. *Id.*, ¶ 27. Although they did not know it, Pequeño, S.L., and Damien were surrounded by undercover members of the Task Force, including the Officer Defendants, who had taken positions around the parking lot in unmarked vehicles. *Id.*, ¶ 28.

The Officer Defendants knew that Pequeño was in the driver's seat of the Corolla, that the unknown male (Damien) was in the front passenger seat, and that the unknown female (S.L.) was in the rear passenger seat. *Id.*, ¶ 29. They were not aware of any information that would lead a reasonable officer to believe that it was necessary to use force of any kind against S.L. *Id.*, ¶ 30. They did not suspect S.L. of committing a crime or resisting arrest and had no reason to believe she posed a threat to anyone. *Id.*, ¶¶ 31-32, 34. They had no reason to believe that S.L. was armed, and, in fact, none of the occupants of the Toyota Corolla had a gun. *Id.*, ¶¶ 33, 35. The Officer Defendants initiated the vehicle containment anyway, knowing that S.L. would be trapped in the Corolla for what they believed would be a "shootout." *Id.*, ¶ 36.

**C. The Officer Defendants execute the "vehicle containment," immobilize the Corolla, and trap its occupants.**

Pequeño began to drive the Toyota Corolla to the exit onto Northern Avenue. *Id.*, ¶ 37. Defendant Dever, in an unmarked Dodge Ram, was stopped at the exit and blocked the Toyota Corolla from leaving. *Id.*, ¶ 38. Pequeño stopped the Toyota Corolla behind the Dodge Ram. *Id.*, ¶ 39. Defendant Dever initiated the vehicle containment by shifting the Dodge Ram into reverse and ramming the front of the Toyota Corolla. *Id.*, ¶ 40. Defendant

Pollard pulled his unmarked Toyota 4Runner behind the Toyota Corolla and rammed the Toyota Corolla's rear bumper. *Id.*, ¶ 41.

Pequeño, S.L., and Damien were shocked and alarmed by the vehicle containment. Damien initially thought that someone had accidently rear-ended the Toyota Corolla and opened the front passenger door to try to see what had happened. An officer yelled at him to get back in the vehicle and put his hands up, and Damien sat back down and closed the door. *Id.*, ¶ 42.

Defendant Ekren and Defendant Walag then pulled their unmarked police vehicles into position along the left and right sides of the Toyota Corolla, respectively. *Id.*, ¶ 43. They used their vehicles to make contact with either side of the Corolla so none of the doors could be opened. *Id.*, ¶ 44.

It is undisputed that the vehicle containment was successful in trapping the Corolla and its occupants. *Id.*, ¶ 45. It is also undisputed that Pequeño revved the engine at least once, and that he put the vehicle in park. *Id.* It is also undisputed that Officer Jones began firing shotgun beanbag rounds into the front driver side window where Pequeño was sitting. *Id.*, ¶ 49. It is also undisputed that no officer ever saw Pequeño with a gun or heard him make any threats. *See id.*, ¶¶ 35, 54-56.

There are significant disputes of fact as to what Pequeño did after Jones fired the beanbag rounds.

### D. Within seconds of executing the vehicle containment, Defendants Pezzelle, Pollard, and Baker begin shooting into the Corolla.

The Officer Defendants surrounded the Corolla with their weapons drawn and began shouting commands over each other, including "Police" and "Put your hands up!" *Id.*, ¶ 47. Defendant Jones fired less lethal beanbag rounds into the driver's side front window where Pequeño was seated. *Id.*, ¶ 49. Within seconds, Defendants Pezzelle, Pollard, and Baker began firing lethal rounds into the side and rear windows of the Toyota Corolla. *Id.*, ¶¶ 50, 58-62.

1   Defendant Pezzelle was positioned on the passenger side of Defendant Walag's
2   vehicle and was using the engine block as cover, and he was roughly in line with the rear
3   passenger door of the Toyota Corolla. *Id.*, ¶ 51. He could see S.L. sitting in the backseat,
4   and he could see Pequeño's silhouette after the front driver's side window was broken by
5   the beanbag rounds. *Id.*, ¶ 53. He saw Pequeño rotate his body to look around at the officers
6   then raise his hands, which were empty. *Id.*, ¶ 54. As Pequeño's hands were raised, he leaned
7   over the center console, presumably to distance himself from the beanbag rounds that were
8   being fired into his window. *Id.*, ¶ 55.

9   The City of Mesa has designated Pezzelle an "expert marksman." At the scene,
10  Pezzelle saw that Pequeño was not holding a gun, weapon, or anything else. *Id.*, ¶ 56. Yet
11  Pezzelle intentionally aimed his gun at the rear passenger side window, where he knew S.L.
12  was sitting. *Id.*, ¶ 58. Without warning, Pezzelle fired five rounds through the window. *Id.*,
13  ¶¶ 58-59.

14  Pezzelle's first shot struck S.L. in the head. *Id.*, ¶ 60.

15  Defendant Pezzelle claims that S.L. "ducked down" before he shot her. That account
16  is contradicted by the statements of Defendants Pollard and Walag. Both said they were able
17  to see S.L. Neither officer reported seeing her "duck down." *Id.*, ¶ 52. Pezzelle also claims
18  that he saw Pequeño "reaching" for something in the center console, even though he admits
19  he could see Pequeño's hands and knew Pequeño was not holding a gun. *See id.*, ¶ 54-56.
20  Pezzelle's assertion that Pequeño was reaching for something is also contradicted by
21  Damien's testimony that Pequeño put the car in park and placed his hands in the air (*Id.*, ¶
22  54-55), and by the testimony of Defendant Jones who testified that after he fired the beanbag
23  rounds into Pequeño's window, Pequeño went down into the passenger seat. *See id.*, ¶ 55.

24  Defendant Pezzelle admitted that the vehicle containment was successful. The
25  Corolla could not escape. *Id.*, ¶ 45. It and its occupants were trapped by the police vehicles.
26  *Id.*, ¶¶ 44-45. Pezzelle also admitted that at the time he fired, the Corolla was not moving.
27  *Id.*, ¶¶ 46, 57.

28

After Defendants Pezzelle, Pollard, and Baker had fired multiple shots into the Toyota Corolla, Defendant Walag had to move his truck back so S.L. could be removed from the backseat. *Id.*, ¶¶ 64-66. S.L. was unresponsive and had significant head trauma. *Id.*, ¶¶ 65-66. She was transported to a hospital but died on the following day from the gunshot wound inflicted by Defendant Pezzelle. *Id.*, ¶ 68.

### E. Procedural History

Plaintiff's Second Amended Complaint ("SAC") alleges state law wrongful death claims and *Monell* claims against the City of Mesa and the City of Chandler. The SAC alleges Fourth Amendment claims against former Chandler officer Garrett Dever, and current and former Mesa officers Michael Pezzelle, James Pollard, William "Chip" Jones, Hoapili Baker, Brandon Ekren, Andrew Walag, Jalyn Bellows, and Donald Rudd. *See* Plaintiff's Second Amended Complaint, (Dkt. 10).

In their answers to Plaintiff's state law wrongful death claim, Defendants asserted various presumptions and defenses, including statutory criminal act and justification defenses and state law qualified immunity. *See* Mesa Defendants' Answer to SAC, Dkt. 12, pp. 35-38, ¶¶ 15, 20, 28-33 (asserting criminal act defense under A.R.S. § 12-712; justification defenses under A.R.S. §§ 13-404, 13-405, 13-406, 13-409, 13-410, 13-411, and 13-413; and qualified immunity under A.R.S. § 12-820, *et seq.*); Chandler Defendants' Answer to SAC, Dkt. 11, pp. 38-39, ¶¶ 9, 11, 16-18 (same, and asserting criminal act and intoxication defenses under A.R.S. §§ 12-711 and 12-716). Defendants also asserted that S.L. voluntarily assumed the risk of her injuries. *See* Dkt. 12, p. 38, ¶ 36; Dkt. 11, p. 38, 12.

This motion for partial summary judgment relates solely to these state law affirmative defenses.

**II. Legal Analysis: As a matter of law, the City Defendants are not entitled to statutory defenses or qualified immunity under Arizona law.**

    **A. The City Defendants are not entitled to the justification defenses under A.R.S. §§ 13-404 through 13-413 because it is undisputed that S.L. did nothing to justify any use of force against her.**

1 A.R.S. §§ 13-404 through 13-411 define circumstances under which a use of force 2 may be legally justified under Arizona law. Section 13-413 provides an affirmative defense 3 from civil liability "for engaging in conduct otherwise justified pursuant to the provisions of 4 this chapter." In this civil case, the City Defendants have the burden of proving justification. 5 *Pfeil v. Smith*, 183 Ariz. 63, 65, 900 P.2d 12, 14 (App. 1995). The City Defendants cannot 6 meet their burden under any of the justification statutes because (a) it is undisputed that S.L. 7 did nothing to justify any use of force against her and (b) because the language of the statutes 8 does not permit Defendants to justify using force against S.L. based on the conduct of 9 Pequeño.

The statutory language of the justification statutes makes clear that it does not permit a defendant to claim that the actions of one person justify using force against another person. This statutory intent is clear from the language of A.R.S. § 13-409:

> A person is justified in threatening or using physical force against **another** if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of **that other person**, **such person** uses or threatens to use physical force and all of the following exist….

Under Arizona's justification statutes, the justification for the use of force must be the conduct of the person against whom force is used. The statute does not permit a defendant to justify the use of force against one person based on the conduct of another.

Thus, to establish that their conduct was justified under A.R.S. §§ 13-404, 13-405, 13-406, 13-409, 13-410, or 13-411, Defendants would have to prove that a reasonable person would have believed that the force was:

a) immediately necessary to protect himself [or a third person] against [S.L.'s] use or attempted use of unlawful physical force (A.R.S. §§ 13-404, 13-405, and 13-406);

b) immediately necessary to effect the arrest or detention or to prevent the escape of [S.L.] and, if "in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of [S.L.], [S.L.] use[d] or threaten[ed] to use physical force (A.R.S. § 13-409); or

     c)    immediately necessary to prevent [S.L.'s] commission of certain violent crimes, such as murder, manslaughter, aggravated assault, burglary, or arson of an occupied structure (A.R.S. § 13-411).

The City Defendants cannot meet the elements of any of these defenses. With respect to the vehicle containment, Defendants cannot show that a reasonable person would believe this use of force—an intentional car crash that traps a girl inside a car—was *immediately necessary*. No one was in danger, and no violent crime was in the process of being committed. Most importantly, the use of force was not at all necessary to arrest Pequeño or his passengers. The Officer Defendants were able to track the location of his cellphone. PSOF, ¶ 15. They knew his last known address and place of employment. PSOF, ¶ 4. There were no exigent circumstances that required his immediate arrest, and the Officer Defendants could have discreetly followed him and apprehended him when the two innocent passengers, S.L. and Damien, were not in the car. PSOF, ¶¶ 15, 24.

An officer is justified in using *deadly* force under A.R.S. § 13-409 only when the officer reasonably believes it is necessary (1) to defend himself or a third person from the imminent use of deadly force or (2) to effect the arrest or prevent the escape of a person who committed or is committing a felony involving the use of a deadly weapon, is attempting to escape by use of a deadly weapon, or "is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay." A.R.S. § 13-410(C). Pezzelle was not justified in using deadly force because the vehicle containment had been successful in effecting arrest or detention of all three people in the Corolla, they had no ability to escape, and the car was in park. Pezzelle had no reasonable belief that Pequeño, S.L., or Damien posed a risk of death or imminent bodily harm to the officers or anyone else, and his use of deadly force was unjustified. *See* PSOF, ¶¶ 3-35, 51-58, 74.

**B.    The City Defendants are not entitled to any defense or presumption under A.R.S. §§ 12-711, 12-712, or 12-716 because they cannot show that S.L. was under the influence of drugs or alcohol or that she was committing, attempting to commit, or fleeing from the commission of a crime.**

The "intoxication" defense under A.R.S. § 12-711 and the "criminal act" defenses under A.R.S. 12-712 and 12-716 provide defenses or presumptions in favor of a defendant

if the defendant proves that the plaintiff's—or in a wrongful death case, the decedent's—injury occurred while the plaintiff or decedent was intoxicated or was actively committing, attempting to commit, or fleeing after having committed a crime. Defendants cannot meet their burden of proof on any of these defenses.

A.R.S. § 12-711 allows the jury to find the defendant not liable if the defendant proves that the decedent was "under the influence" of drugs or alcohol and, as a result, was at least fifty percent responsible for his or her own injuries:

> In any civil action, the finder of fact may find the defendant not liable if the defendant proves that. . . the decedent was under the influence of an intoxicating liquor or a drug and as a result of that influence the . . . decedent was at least fifty per cent responsible for the accident or event that caused the claimant's or decedent's harm.

A.R.S. § 12-711. One of S.L.'s hospital blood samples revealed a small amount of methamphetamine, without the presence of metabolites. *See* PSOF, ¶¶ 69-71. This is consistent with secondhand exposure, given the undisputed testimony that S.L. did not use drugs. PSOF, ¶¶ 70-71. There was nothing unusual about her conduct or behavior that day. She did not behave erratically and never engaged with or threatened the officers. *See* PSOF, ¶¶ 72-73. Defendants' own expert testified that he could not show any link between S.L.'s behavior and the presence of methamphetamine in her blood. PSOF, ¶ 73. Defendants have not pointed to one shred of evidence that would lead a jury to conclude that S.L. was "under the influence" of drugs and that, as a result of that influence, she was at least fifty percent responsible for her own death. Therefore, as a matter of law, the Officer Defendants cannot show that S.L. was under the influence and cannot meet their burden of proof on this defense.

A.R.S. § 12-712 also allows the jury to find the defendant not liable if the defendant proves that the decedent was "attempting to commit, committing or immediately fleeing" from either a felony or misdemeanor criminal act and that the decedent, as a result of that act, was at least fifty percent responsible for his or her own harm. *See* A.R.S. § 12-712. However, if the criminal act at issue is a misdemeanor, the defendant must also prove that the defendant "did not act intentionally." *See* A.R.S. § 12-712(B), (C). Similarly, under

1  A.R.S. § 12-716, statutory presumptions are triggered when a law enforcement officer
2  intentionally uses physical force against a plaintiff while the plaintiff "is attempting to
3  commit, committing or fleeing after having committed or attempted to commit a felony
4  criminal act . . . ." *See* A.R.S. § 12-716(A); *Ryan v. Napier*, 245 Ariz. 54, 61, ¶ 25, 425 P.3d
5  230, 237 (2018). In such situations, an officer is presumed to have acted reasonably if the
6  officer used physical force to protect himself or others, to effect an arrest, or to prevent the
7  plaintiff's escape. *See* A.R.S. § 12-716(A)(1). The officer's employer is presumed to have
8  reasonably hired and trained the officer to use physical force. *See* A.R.S. § 12-716(A)(2).

9  Defendants are not entitled to the criminal act defense under A.R.S. § 12-712 or the
10 statutory presumption under A.R.S. § 12-716 because they cannot prove that the wrongful
11 death decedent, S.L., was committing, attempting to commit, or fleeing after having
12 committed any crime, and certainly not a felony criminal act. *See* A.R.S. §§ 12-712(A); 12-
13 716(A). Because the Officer Defendants indisputably acted intentionally in executing the
14 vehicle containment then firing their weapons into the Toyota Corolla, they cannot claim
15 that they are entitled to a defense based on an alleged misdemeanor criminal act. *See* A.R.S.
16 § 12-712(B); *Ryan*, 425 P.3d at 234 (declining to recognize a claim for negligent use of
17 intentionally inflicted force).

18 The Officer Defendants admitted that S.L. was not under arrest, that she posed no
19 threat to them, and that they had no reason to believe that she was armed. PSOF, ¶¶ 30-34.
20 More importantly, Defendants have not set forth any evidence showing that S.L. was
21 committing or attempting to commit a felony at any point before or during the vehicle
22 containment and subsequent shooting. S.L. never attempted to flee from the Officer
23 Defendants and, in fact, was trapped within the Toyota Corolla during the entire incident.
24 PSOF, ¶¶ 30-34, 44. Because no reasonable person viewing this evidence could reach the

conclusion that S.L. was engaging in or fleeing from a felony criminal act, Plaintiff is entitled to summary judgment on these defenses as a matter of law.[1]

### C. The City Defendants are not entitled to the qualified immunities under A.R.S. § 12-820.02 because none of those immunities apply.

The Arizona Legislature adopted a series of qualified immunities in 1984, including A.R.S. § 12-820.02, which provides a government official with qualified immunity from ordinary negligence if his or her conduct falls into one of eleven specific situations enumerated in the statute. Those situations include, for example, the "failure to make an arrest or to retain an arrested person in custody" or the failure to prevent injuries caused by escaped prisoners. *See* A.R.S. § 12-820.02(A). None of the statutory qualified immunities are applicable here.

### D. The City Defendants have waived the statutory defenses in A.R.S. § 12-820, *et seq.*, including the "felony immunity" at 12-820.05 by failing to allege them in their answers.

A.R.S. § 12-820.05 provides absolute immunity to public entities "for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." A.R.S. § 12-820.05(B). The City of Mesa and the City of Chandler waived any defense under this provision by failing to "affirmatively state" it in

---

[1] Defendants may attempt to argue that they are entitled to defenses or presumptions under A.R.S. §§ 12-711, 12-712, or 12-716 because Brandon Pequeño, rather than S.L., was under the influence of methamphetamine, had committed a felony, or was attempting to flee when he revved the Toyota Corolla's engine during the vehicle containment. The Court should reject any such argument because the plain language of A.R.S. §§ 12-711, 12-712, and 12-716 makes clear that these statutes only apply to the conduct of "the claimant or, if the claimant is an heir or the estate of a deceased person, the decedent." *See e.g.*, A.R.S. § 12-711. Brandon Pequeño is neither a claimant nor the deceased subject of the wrongful death claim in this case. *See Cave Creek Unified Sch. Dist. v. Ducey*, 231 Ariz. 342, 348, ¶ 11, 295 P.3d 440, 446 (App.), *aff'd,* 233 Ariz. 1, ¶ 11, 308 P.3d 1152 (2013) ("Generally, we find the best indication of intent in the plain language of the statute and we will typically not look beyond it when the language is clear and unambiguous.").

1   their Answers and by failing to assert it over almost three years of litigation. *See* Fed. R.
2   Civ. P. 8(c)(1); *City of Phoenix v. Fields*, 219 Ariz. 568, 575, 201 P.3d 529, 536 (2009)
3   (holding that state law immunity is waived by substantial participation in litigation); Dkt.
4   11; Dkt. 12.

**E.     The City Defendants are not entitled to the defense of assumption of the risk.**

Plaintiff is entitled to summary judgment on the City Defendants' affirmative defense of "assumption of risk." A Defendant who asserts assumption of the risk must be able to show three elements:

> (1) There must be a risk of harm to plaintiff caused by defendant's conduct or by the condition of the defendant's land or chattels;
>
> (2) Plaintiff must have actual knowledge of the particular risk and appreciate its magnitude;
>
> (3) The plaintiff must voluntarily choose to enter or remain within the area of the risk under circumstances that manifest his willingness to accept that particular risk.

*Garcia v. City of S. Tucson*, 131 Ariz. 315, 319, 640 P.2d 1117, 1121 (Ct. App. 1981) (*citing Hildebrand v. Minyard*, 16 Ariz.App. 583, 494 P.2d 1328 (1972)). "A general knowledge of "a danger" is not sufficient, but rather plaintiff must have actual knowledge of the specific risk which injured him and appreciate its magnitude." *Id.*

Of the three elements, Defendants can show only the first. The City Defendants' conduct—trapping S.L. in a car and then shooting into the car—created an obvious risk to S.L. But the City Defendants cannot show the remaining elements. On the second element, Defendants cannot show that S.L. had actual knowledge that Defendants intended to trap her in a car for a shootout. On the third element, Defendants cannot show that S.L. "voluntarily [chose] to enter or remain within the area of the risk under circumstances that manifest[ed] [her] willingness to accept" the risk of being trapped in a car and shot. Indeed, the *Garcia* case, which involved a police shooting, is directly on point: "Garcia did not know that the

assault was going to take place and did not consent to being shot at by the South Tucson Police Department." *Garcia*, 640 P.2d at 1121.

### III. Conclusion

Plaintiff requests that the Court grant partial summary judgment and find, as a matter of law, that on Plaintiff's state law wrongful death claim the City of Mesa and the City of Chandler cannot assert the following affirmative defenses:

(a) the "criminal act," "intoxication," or "justification" defenses under A.R.S. §§ 12-711, 12-712, 12-716, or 13-404, *et seq.*;

(b) qualified immunity under A.R.S. § 12-820, *et seq.*;

(c) absolute immunity under A.R.S. § 12-820.05; and

(d) the defense of assumption of risk.

RESPECTFULLY SUBMITTED: April 9, 2021

        **ROBBINS & CURTIN, p.l.l.c.**

By: /s/ Jesse M. Showalter
     Joel B. Robbins
     Jesse M. Showalter
     301 E. Bethany Home Road, Ste. B-100
     Phoenix, Arizona 85012
     *Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

# CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

John P. Torgenson, Esq.
Torgenson Law
333 W. Roosevelt Street
Phoenix, Arizona 85003
jtorgenson@torgensonlaw.com
*Co-Counsel for Plaintiff*

John T. Masterson, Esq.
Joseph J. Popolizio, Esq.
Justin M. Ackerman, Esq.
Ian C. Beck, Esq.
Jones, Skelton & Hochuli, P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
ibeck@jshfirm.com
*Attorneys for Mesa Defendants*

J. Randall Jue, Esq.
Chandler City Attorney's Office
P.O. Box 4008, MS602
Chandler, Arizona 85244-4008
randy.jue@chandleraz.gov
*Attorneys for Chandler Defendants*

/s/ Julie W. Molera