1  J. Randall Jue, SBN 014816
   Chandler City Attorney's Office
2  P.O. Box 4008, MS602
   Chandler, Arizona 85244-4008
3  Telephone (480) 782-4655
   Facsimile (480) 782-4652
4  Attorney E-Mail: Randy.Jue@chandleraz.gov
   Minute Entries: chandlercityattorney@chandleraz.gov
5  Attorneys for the City of Chandler and Garrett Dever

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF ARIZONA**

8  Jennifer Lane,                          No. 2:19-cv-00852-SMB

9                          Plaintiff,
        vs.
10                                         **CHANDLER DEFENDANTS'**
   City of Mesa, et al.,                   **STATEMENT OF FACTS IN**
11                                         **SUPPORT OF THEIR MOTION FOR**
                          Defendants.      **SUMMARY JUDGMENT**
12
                                           (Assigned to Honorable Susan M.
13                                         Brnovich)

14       Defendants City of Chandler and Garrett Dever ("Chandler Defendants"), through

15  undersigned counsel, hereby submits the following statement of facts in support of their motion

16  for summary judgment:

17       1.      Brandon Pequeno admitted to his Maricopa County probation officer Shana

18  Edmundson-Borquez ("Edmundson"), who began supervising him in 2016, that he was

19  affiliated with the Surenos, a Latin-based California gang that is part street gang and part

20  prison gang.  (Deposition of Shana Edmundson-Bojorquez ("Edmundson Deposition") 13,

21  30-33 [Exhibit 1].)

22

                                           1

2.      In March of 2017, Edmundson learned from Pequeno's girlfriend Frances Gomez that Pequeno had stolen her Glock .380 pistol ("Glock Pistol").   (Edmundson Deposition 51-55.)

3.      On April 3, 2017, Edmundson submitted a "Petition to Revoke Probation – Order for Warrant" for Pequeno, which included the allegation that Pequeno had taken possession of the Glock Pistol on or about March 28, 2017.  (Edmundson Deposition 63-64, Exhibit #7 to Witness Leah Lara.)  On that same date, based on the Petition, Commissioner Christine Mulleneaux issued a warrant for the arrest of Pequeno.  (*Id*.)

4.      On April 10, 2021, Leah Lara ("Lara")—a probation officer for Maricopa County who is assigned to the Fugitive Apprehension Unit ("FAU") and occasionally works with Violent Offender Unit ("VOU")[1]—was assigned the Pequeno probation violation case. (Deposition of Leah Lara ("Lara Deposition") 10-11, 15-18, 34 [Exhibit 2].)

5.      Lara testified that she telephonically contacted Detective Michael Pezzelle ("Pezzelle"), a member of the VOU, to see if the Task Force would be interested in taking the case because Pequeno "had a lot of prior gang and weapons charges out of California, and he is associated with some cases out of Mesa that included violence too, and the fact he could be in possession of a firearm."  (Lara Deposition 72, 78-79.)

6.      On April 10, 2017, Lara sent an email to Pezzelle regarding the Pequeno matter that included two probation violation arrest warrants for Pequeno.  (Lara Deposition 81-85, Exhibit #8 to Witness L. Lara.)  The Task Force accepted the Pequeno case.  (*Id*. 105-106.)

---

[1] The VOU is one acronym used for the East Valley Violent Offenders Task Force ("Task Force"), which is overseen by the U.S. Marshals Service.

7.     On March 28, 2017, Gomez called the Chandler Police Department to report that Pequeno had stolen her Glock Pistol.   (Deposition of Frances Gomez ("Gomez Deposition") 16-17 [Exhibit 3].)

8.     Gomez testified that Pequeno later told her in April that he had sold the Glock Pistol.  (Gomez Deposition 19-20, 77.)

9.     On April 20, 2017, Gomez got off work at about 2:30 pm and went home to her apartment, which was a unit in an apartment complex located at 1971 North Hartford Street in Chandler ("Chandler Apartment Complex"), where she received a phone call from Veronica Lane, the sister of S.L., who informed Gomez that Veronica had slashed the tire of Gomez's white Toyota Corolla ("Toyota Corolla") the night before.  (Gomez Deposition 11, 23-25, 27, 120-121.)

10.     During Gomez's phone call with Veronica, Pequeno came down the stairs of Gomez's Apartment and a physical altercation erupted which resulted in Pequeno slapping Gomez in the face and then grabbing Gomez's belongings, including the car keys to the Toyota Corolla and her phone.  (Gomez Deposition 30-31, 126-128.)    When Gomez attempted to grab her car keys from Pequeno he hurt her hand "really bad."  (*Id*. 128.)

11.     Pequeno left Gomez's Apartment and got in the Toyota Corolla and drove away a short distance, only to turn around and attempt to physically force Gomez to get into the Toyota Corolla.  (Gomez Deposition 33-34, 129.)  Gomez was frightened that Pequeno was "going to hurt me or he was going to crash the car and probably hurt both of us."  (*Id*. 167.)

12. Zachary Hays, a resident at the Chandler Apartment Complex, witnessed a man grab a woman and attempt to kidnap her by forcing her into a white car; he called 911. (Deposition of Zachary Hays ("Hays Deposition") 10-12, 18 [Exhibit 4].)

13. Micah Pals, a resident of the Chandler Apartment Complex, was leaving for work in his car when he was approached by a woman who asked to use his phone. (Deposition of Micah Pals ("Pals Deposition') 11 [Exhibit 5].) At some point, a man walked over to Pals' car and held a large knife against Pals' window and said, "Don't talk to my girl." (*Id*. 12.) Then, the man picked up the woman, put her over his shoulder, and attempted to put her in a car but was unsuccessful. (*Id*. 16-17, 76.) The man then left the Chandler Apartment Complex in a car. (*Id*. 76.)

14. Pezzelle responded to Chandler Apartment Complex after Pequeno's altercation with Gomez and learned that Chandler Police Officers attempted to pull Pequeno over for a traffic stop as he fled the complex but Pequeno failed to yield and was blowing red lights, which led to the Chandler officers terminating their pursuit of Pequeno. (Deposition of Michael Pezzelle ("Pezzelle Deposition") 66 [Exhibit 6].)

15. Gomez told Pezzelle twice that she believed Pequeno still had her Glock Pistol that he had stolen from her. (Pezzelle Deposition 63.)

16. After fleeing the Chandler Apartment Complex, Pequeno picked up Damien Sandoval-Rosa ("Sandoval") and S.L. near S.L.'s residence. (Deposition of Damien Sandoval-Rosa ("Sandoval Deposition") 17-18 [Exhibit 7].)

17. After Sandoval and S.L. were picked up, Pequeno and Sandoval smoked heroin and methamphetamine multiple times. (Sandoval Deposition 85-92.)

18.     Pequeno drove Sandoval and S.L. to the apartment complex near 51st Avenue and Northern Avenue [5220 W. Northern Avenue] in Glendale ("Glendale Apartment Complex") where Sandoval was living in a unit with his brother.  (Sandoval Deposition 18-20, 85.)

19.     Pequeno, Sandoval, and S.L. got out of the Corolla and went inside the apartment at the Glendale Apartment Complex.  (Sandoval Deposition 25-26.)

20.     At some point, the three of them decide to go get groceries and they left the apartment and got in the Toyota Corolla.  (Sandoval Deposition 8-9.)

21.     Pequeno was in the driver's seat; Sandoval was in the front passenger seat and S.L. was sitting behind Sandoval in the backseat.  (Sandoval Deposition 8.)

22.     Defendant Garrett Dever, who was a member of the Task Force, testified that he went to the Chandler Apartment Complex after Pequeno fled the scene and he learned that (1) Pequeno was in possession of a Glock pistol and a knife, (2) high on methamphetamine, and (3) might have a hiding place with a girl at the Glendale Apartment Complex.  (Deposition of Garrett Dever ("Dever Deposition") 9, 19, 23-24, 26, 29, 32, 34-35 [Exhibit 8].)

23.     The members of the Task Force began trekking from the East Valley to the Glendale Apartment Complex and eventually the Toyota Corolla was located at the complex. (Dever Deposition 35.)

24.     Detective Edward Pollard ("Pollard") was the first member of the Task Force to spot the Toyota Corolla in the vicinity of the Glendale Apartment Complex, but subsequently lost sight of it.  (Dever Deposition 36; Deposition of Edward Pollard ("Pollard Deposition") 179-182 [Exhibit 10.)   Shortly thereafter, Detective Andrew Walag ("Walag"), another

member of the Task Force, located the Toyota Corolla in the parking lot of the Glendale Apartment Complex and reported that another male and female were with Pequeno.  (*Id*. 189.)  The three of them disappeared into the complex and Pollard did not know with unit they went to.  (*Id*. 196.)

25.    After arriving at the Glendale Apartment Complex, Dever parked his dark Dodge pickup ("Truck") in the southeast side ("Southeast Side") of the complex parking lot. (Dever Deposition 38, 52-53.)

26.    After the members of the Task Force assembled at the Glendale Apartment Complex, the plan was to execute a vehicle containment near the Southeast Side exit or near the west side ("West Side") exit of the complex, depending on which way Pequeno decided to exit the complex in the Toyota Corolla.  (Dever Deposition 59.)

27.    Dever said a vehicle containment would not have been done without approval by Sgt. Jalyn Bellows, who was one of his supervisors on the Task Force.  (Dever Deposition 57.)  Bellows took responsibility for approving the plan to perform a vehicle containment maneuver on the Toyota Corolla (Deposition of Jalyn Bellows ("Bellows Deposition") 194-196 [Exhibit 9].)

28.    The members of the Task Force were using their radios to communicate with each other at the Glendale Apartment Complex.  (Dever Deposition 45.)

29.    At some point, Pequeno returned to the Toyota Corolla and drove the car in the direction of where Dever was located; Dever positioned his Truck facing the Southeast Side exit.  (Dever Deposition 61.)   When Pequeno stopped behind Dever's Truck, Sandoval

believed the Truck was waiting to turn left onto Northern Avenue.  (Sandoval Deposition 9-10.)

30.    As the front block or lead vehicle of the vehicle containment, Dever's responsibility was to initiate the vehicle containment.  (Dever Deposition 65.)  However, Dever said that any member could have called off the Vehicle Containment.  (*Id*.)

31.    When Dever initiated the Vehicle Containment maneuver, he broadcast the word "move" or something similar over the radio and put the Truck in reverse and stopped when he made contact with the Toyota Corolla.  (Dever Deposition 66-69.)

32.    After the Truck made contact with the Toyota Corolla, Dever left the Truck in reverse and put his foot on the brake.  (Dever Deposition 69.)

33.    Dever crouched down in his seat and slumped down and made himself as small as possible.  (Dever Deposition 72-73.)

34.    When the vehicle containment maneuver was executed, Sandoval testified that it seemed as if the Toyota Corolla was rear ended "so I [Sandoval] went to go jump out of the vehicle and look behind us."  (Sandoval Deposition 12.)  Sandoval did not remember the front of the Toyota Corolla, other than it got pinned against the Truck.  (Sandoval Deposition 156.)  Sandoval testified that he did not recall the Truck moving during the vehicle containment.  (Sandoval Deposition 205.)

35.    When Sandoval jumped out, he saw police vehicles and people with guns trained on the Toyota Corolla and they yelled at Sandoval to get back in the car, which he did immediately.  (Sandoval Deposition 12.)

36.     Sandoval said that Pequeno attempted to hit the gas, but the engine only was able to rev because the Toyota Corolla was boxed in.  (Sandoval Deposition 12.)  At some point, Dever felt the Toyota Corolla pushing against the Truck.  (Dever Deposition 77.)

37.     After he slumped down, Dever first heard commands, which possibly included words such as "Show me your hands" and Hands up" and "Police," and then he heard shooting.  (Dever Deposition 74-79.)

38.     Pollard's vehicle was the rear vehicle of the vehicle containment.   (Pollard Deposition 211.)  Pollard made the decision to start shooting after observing Pequeno reach toward the center console.  (Pollard Deposition 230, 233-234, 236, 239.)

39.     Walag's vehicle was the passenger-side vehicle of the vehicle containment. (Deposition of Andrew Walag ("Walag Deposition") 26 [Exhibit 11].)   Walag issued commands to the car occupants to put their hands up and he observed Pequeno revving the engine and ducking towards the center console.  (Walag Deposition 30-31, 34-35, 38-39.)

40.     Defendant Brandon Ekren's vehicle was the driver's-side left block of the vehicle containment.  (Deposition of Brandon Ekren ("Ekren Deposition") 120, 124 [Exhibit 12].)  Ekren testified that Pequeno was making the Toyota Corolla rock back and forward. (Ekren Deposition 126.)  Ekren testified that he gave commands but Pequeno did not appear to be listening to the Task Force commands and was reaching around the whole time.  (Ekren Deposition 137, 141-142.)

41.     After the vehicle containment was completed, Defendant Chip Jones ("Jones") issued commands, observed the Toyota Corolla lurch backwards and forward, and shot three rounds from his less lethal shotgun at Pequeno's window.  (Deposition of William Jones

("Jones Deposition") 275-279 [Exhibit 13].) Through the hole in the window created by the rounds of the shotgun, Jones observed Pequeno turn towards the center console. (Jones Deposition 281.)

42. Defendant Hoapili Baker, who was not part of the vehicle containment maneuver, moved toward the trapped Toyota Corolla and fired one round after he saw Pequeno reaching down toward the center console and was digging for something and appeared to have an object in his hands. (Deposition of Hoapili Baker ("Baker Deposition") 72-73 [Exhibit 14].)

43. Pezzelle yelled multiple commands, including "Police, hands up," at the occupants of the Toyota Corolla. (Pezzelle Deposition 103, 108-110.) Pezzelle could not see Pequeno's hands but observed him leaning over the center console. (*Id*. 115.) He began shooting (firing five rounds) when Pequeno raised his hand and appeared to be holding a pistol. (*Id*. 116-117.)

44. Dever recalls training on vehicle containment every two or three times that the Task Force did its Friday training session, which included actual discussions regarding the situation and location of a containment and the safety considerations involved. (Dever Deposition 166, 208-209.) Dever also received training from the U.S. Marshals Service and from Sergeant Pete Rowton, who supervised the Chandler Criminal Apprehension Unit ("CAU"). (*Id*. 167.)

45. Although Chandler paid his base pay, Dever's immediate supervisors on the Task Force was Sgt. Bellows and U.S. Marshal Pat Willhite. (Dever Deposition 11.) The U.S. Marshal Service paid Dever's overtime up to a certain amount. (*Id*. 13.)

46.     Although Dever was technically also a member of the Chandler CAU (which Rowton supervised) while serving on the Task Force, he rarely reported to Rowton; only as needed.  (Dever Deposition 11-12.)

47.     Dr. Grant Herndon, who was employed by the Maricopa County Office of the Medical Examiner in 2017, performed the postmortem examination of S.L. and concluded that the cause of death to S.L. was a gunshot wound to the head.  (Deposition of Grant Herndon, DO 10 [Exhibit 15].)  As to Pequeno, he found that he had methamphetamine in his system at the time of his death.  (*Id*. 71-72.)

48.     Melissa Deanda ("Deanda"), a Lieutenant with the Chandler Police Department, who served on the Task Force from August of 2013 until October of 2014, said her training included taking into consideration all of the circumstances present at the proposed location of the vehicle containment, including the proximity of bystanders.  (Deanda Declaration ¶ 7.) This evaluation of risks was a fluid process that continued until the vehicle containment maneuver was completed.  (Declaration of Melissa Deanda ("Deanda Declaration") ¶¶ 1-2, 4, 7 [Exhibit 16].)

49.     As for the training received by Dever and supervision of Dever on the Task Force, as it relates to vehicle containments, the protocols and procedures described by the members of the Task Force in their depositions appear to be the same or similar to what Deanda experienced during her tenure on the Task Force.  (Deanda Declaration ¶ 11.)

50.     Plaintiff's Police Practices Expert Scott DeFoe issued a report that neither criticizes Dever's execution of the front block technique, nor finds any failure in Chandler's

supervision and training of Dever or in Chandler's policies as to the vehicle containment maneuver.  (Report by Scott DeFoe dated September 18, 2020 [Exhibit 17].)

RESPECTFULLY SUBMITTED this 9th day of April, 2021.

CHANDLER CITY ATTORNEY'S OFFICE

/s/ J. Randall Jue
J. RANDALL JUE
Assistant City Attorney for Defendants
City of Chandler and Garrett Dever

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of April 2021, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

I further certify that on the 9th day of April 2021, I have emailed the foregoing document to the following:

Joel B. Robbins
Jesse M. Showalter
Robbins & Curtin, P.L.L.C.
301 East Bethany Home Rd., Suite B-100
Phoenix, AZ 85012
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
lauren@robbinsandcurtin.com
Attorneys for Plaintiff
John P. Torgenson
Torgenson Law
333 W. Roosevelt St.
Phoenix, AZ 85003
jtorgenson@torgensonlaw.com
Attorney for Plaintiff

Joseph J. Popolizio
John T. Masterson
Justin M. Ackerman
Jones, Skelton & Hochuli, P.L.C.
40 North Central Ave., Suite 2700
Phoenix, AZ 85004
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
Attorneys for Defendant City of Mesa

/s/ Kellie Evans