John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
Ian C. Beck, Bar #035599
JONES, SKELTON & HOCHULI P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1741
Fax: (602) 200-7876
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
ibeck@jshfirm.com

City of Mesa, Michael Pezzelle, James Pollard,
Hoapili Baker, Jalyn Bellows, William Jones,
Brandon Ekren, Andrew Walag, and Donald
Rudd

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Lane, individually and on behalf of the statutory beneficiaries of S.L., and in her capacity as the Personal Representative of the Estate of S.L.,<br><br>Plaintiffs,<br><br>v.<br><br>City of Mesa, a municipality; City of Chandler, a municipality; Michael Pezzelle, an individual; James Pollard, an individual; Hoapili Baker, an individual; Jalyn Bellows, an individual; William Jones, an individual; Brandon Ekren, an individual; Andrew Walag, an individual; Donald Rudd, an individual; and Garrett Dever, an individual,<br><br>Defendants. | No. 2:19-cv-00852-SMB<br><br>**MESA DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

1       Defendants City of Mesa, Michael Pezzelle, James Pollard, Hoapili Baker, Jalyn

2   Bellows, William Jones, Brandon Ekren, Andrew Walag, and Donald Rudd ("Mesa

3   Defendants") hereby Respond in opposition to the Plaintiffs' Motion for Partial Summary

4   Judgment. [Doc. 303]. Plaintiffs' Motion argues that the Cities of Mesa and Chandler are not

5   entitled to assert statutory criminal act defenses, justification defenses, state law immunities,

6   or assumption of the risk defenses. [*See* Doc. 303 at 9:22-23]. However, rather than making

7   specific arguments, Plaintiffs use their Motion for *Partial* Summary Judgment as an

8   opportunity to present a full accounting of their version of the facts of this case to the Court.

9   Accordingly, as noted in the Mesa Defendants' objections to Plaintiffs' Statements of Fact,

10  the vast majority of Plaintiffs' Statement of Facts in support of their Motion for Partial

11  Summary Judgment have no relevance, whatsoever, to the Mesa Defendants' defenses at issue.

12  As a result, the Court should not consider those irrelevant portions of Plaintiffs' Motion.

13      On the merits, in arguing that the City of Mesa is not entitled to certain

14  affirmative defenses, Plaintiffs readily turn a blind eye to the uncontested, violent criminal acts

15  of Brandon Pequeño. It is undisputed that on April 20, 2017, Pequeño assaulted his girlfriend,

16  stole her vehicle, attempted to kidnap her at knifepoint, threatened a bystander with the same

17  knife, used methamphetamines and heroin, and fled from police, all while reportedly armed

18  with a stolen handgun. Plaintiffs gloss over these details to concede merely that Pequeño "was

19  a criminal and a legitimate target for arrest." Yet they readily ignore that when confronted by

20  detectives, Pequeño used his vehicle as a battering ram to try to break free of the detectives'

21  containment and made furtive movements as if to draw a weapon. [*Id.* at 2:13-14]. Plaintiffs

22  also willingly ignore the reality that Pequeño posed an imminent threat of deadly bodily harm

23  to the individual Defendants and the public. Instead, ignoring Pequeño's violent criminal acts

24  and the potential for additional, drug induced violence, Plaintiffs simply argue that the City of

25  Mesa is not entitled to assert appropriate state law affirmative defenses as a result of his

26  conduct. Plaintiffs arguments are misplaced and improper.

27

28

2

# I.   FACTUAL BACKGROUND[1]

As a threshold issue, the Mesa Defendants note that unlike their Motion for Summary Judgment (Doc. 306), this Court must view the facts and evidence in the light most favorable to the Mesa Defendants, not Plaintiffs, when assessing whether Plaintiffs are entitled to summary judgment on the Mesa Defendants' affirmative defenses.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 255 (1986).  Accordingly, Defendants set forth the relevant facts and evidence in the record in the light most favorable to them, as they are entitled in this context.

## A.   Pequeño Was A Violent Felon Who Posed A Serious Threat To The General Public And To The Individual Defendants.

In April 2017, Pequeño had two felony probation violation warrants out for his arrest.  [DSOF ¶ 17]. The VOU was tasked with locating and apprehending Pequeño. [DSOF ¶ 23]. During its investigation, the VOU received information that Pequeño had stolen a Glock 42 handgun from his girlfriend, Frances Gomez. [DSOF ¶ 26].  Then, on April 20, 2017, Pequeño undisputedly embarked on a day-long violent crime spree that included:

- Physically assaulting Ms. Gomez [DSOF ¶ 29; PSOF ¶ 5];

- Threatening Micah Pals with a knife [DSOF ¶¶ 35-36; PSOF ¶ 5];

- Attempting to forcibly kidnap Ms. Gomez while armed with a knife [DSOF ¶¶ 37-38; PSOF ¶ 5];

- Stealing Ms. Gomez's vehicle [DSOF ¶ 39; PSOF ¶ 5];

- Smoking heroin and methamphetamines [DSOF ¶ 52][2];

---

[1] The Mesa Defendants incorporate by reference their statements of fact filed in support of their Motion for Summary Judgment (Doc. 308), as if fully stated herein.  The Mesa Defendants refer to these statements of fact as "DSOF."

[2] There is some indication, contrary to Plaintiffs' claims, that S.L. also consumed methamphetamines on April 20, 2017, and certainly had a history of recreational drug use. Veronica Lane smoked recreational marijuana with S.L. on a daily basis. [DASOF ¶ 3]. Jennifer Lane knew that Veronica Lane and S.L. both smoked marijuana together. [DASOF ¶ 4]. The Mesa Defendants' expert witness Dr. Mace Beckson concluded that "[i]t would be improbable that S.L.'s blood methamphetamine concentration would have been caused by secondhand smoke from another person smoking methamphetamine in a pipe." [DASOF ¶ 5]. Dr. Beckson further concluded that "it is more probable than not that [S.L.] was under the influence of methamphetamine at the time of the vehicle containment." [DASOF ¶ 6] Dr. Beckson concluded that a novice user of methamphetamine, like S.L., "may also be less capable of functioning under the influence of the drug." [DASOF ¶ 7]. During the antemortem toxicology screening of S.L., methamphetamine was only tested for and detected in one of two samples. [DASOF ¶ 14].

1              •      Driving erratically [DSOF ¶¶ 54-55, 65]; and

2              •      Evading police officers [DSOF ¶¶ 59-60].

3  All the while, the VOU detectives were aware that Pequeño was reportedly armed with a

4  handgun. [DSOF ¶ 63].[3]

5      **B.**    **When The Detectives Attempted To Detain Pequeño, He Immediately Began Using Force To Break Free And Escape.**

6

7           Ultimately, the VOU tracked Pequeño to an apartment complex in Chandler,

8  Arizona. [DSOF ¶¶ 61-63, 67-69; PSOF ¶ 11]. After they were unable to locate Pequeño on

9  foot, the detectives developed a plan to enact a vehicle containment to apprehend Pequeño.

10  [DSOF ¶¶ 79-80; PSOF ¶ 15]. The detectives determined that Pequeño, still in the apparent

11  midst of a violent crime spree, posed too great a risk to the detectives and to the public to be

12  allowed to leave the parking lot, and made a vehicle containment necessary. [DSOF ¶ 81].

13  When in the field immediately prior to employing tactics to apprehend a suspect, the VOU

14  detectives do not have the opportunity to conduct a formal briefing on issues such as

15  minimizing risk of harm, use of force following a vehicle containment, use of force commands,

16  or communicating with passengers inside the vehicle. [DASOF ¶ 1]. When the detectives

17  initiated the vehicle containment, Pequeño immediately began trying to ram his way free.

18  [DSOF ¶¶ 95-103; *see also* DASOF ¶ 9[4]  (depicting the relative locations of the individual

19  Defendants' vehicles once the vehicle containment maneuver was initiated)].[5] Pequeño's

20  efforts in ramming his vehicle back and forth posed a great risk of injury to the nearby

21

---

22      [3] Plaintiffs dispute that the VOU detectives were aware that Pequeño was reportedly armed with a gun by referencing Frances Gomez's recantation of her previous allegation that

23  Pequeño had stolen and was in possession of her gun. [Doc. 303 at 5:13-15; PSOF ¶ 20]. Plaintiffs also ignore that Pequeño was suspected of committing a robbery in Mesa, Arizona,

24  while armed with a gun. [DSOF ¶ 27]. Accordingly, irrespective of Ms. Gomez's statements to Det. Pezzelle, the VOU was aware that Pequeño was reportedly armed with a handgun.

25      [4] Plaintiffs' claim that Det. Pollard was driving an unmarked Toyota 4Runner, which is

26  inaccurate. [*See* PSOF ¶ 41]. In fact, Det. Pollard was driving a Ford Explorer. [DASOF ¶ 2].

      [5] Plaintiffs concede that the front-seat passenger, Damien Sandoval-Rosa, heard

27  Pequeño rev his engine during the vehicle containment. [PSOF ¶ 45]. Additionally, the individual Defendants on scene and within sight and earshot observed Pequeño accelerate,

28  turn his wheel, and attempt to reverse while the containment was being enacted. [DSOF ¶¶ 95-103].

detectives. [DSOF ¶ 104]. It also presented Pequeño with an opportunity to escape from custody and flee, presenting great risk to the public at large. [*Id.*].



**C.** **Pequeño Made A Threatening, Furtive Movement And Dets. Baker, Pollard, And Pezzelle Used Deadly Force To Protect Themselves, Their Fellow Detectives, And To Prevent Pequeño From Escaping.**

After his vehicle finally came to a rest, Pequeño quickly leaned over towards the vehicle's center console instead of complying with the detectives' commands. [DSOF ¶ 110]. The detectives then observed Pequeño rummaging around for some unknown object in the center console area. [DSOF ¶ 111]. Sandoval-Rosa also saw Pequeño make a sudden movement back towards the driver's side door then lean over toward the center console. [DASOF ¶ 10]. In that moment, the detectives knew that Pequeño was a violent felon who

5

was reportedly using illegal drugs, would engage in a gunfight with detectives if confronted, and was reportedly armed with a stolen handgun. [DSOF ¶ 112].[6] After rummaging around for an unknown and unseen object, Pequeño made a furtive movement back toward the driver's side of the vehicle and appeared to have something in his hands. [DSOF ¶¶ 113-114].[7] Seeing these movements, Dets. Baker, Pollard, and Pezzelle deployed lethal force against Pequeño. [DSOF ¶¶ 117, 119, 126]. Det. Baker aimed directly at Pequeño. [DSOF ¶ 117]. Det. Pollard aimed for the upper left portion of the rear windshield, intending for his bullets to track downward towards Pequeño. [DSOF ¶¶ 119-120]. Det. Pezzelle had an unobstructed view of Pequeño and aimed every single one of his shots solely at Pequeño. [DSOF ¶¶ 122, 126-128].

Pequeño was shot three times and died.  [DSOF ¶¶ 134, 136].  S.L. was also struck with a bullet from Pezzelle's gun (which was aimed at Pequeño) and, as a result, unfortunately died.  [DSOF ¶¶ 137, 139].

Given those circumstances, the Mesa Defendants' police practices expert, Kenneth Wallentine, opined that the use of force was appropriate and that the officers reasonably perceived Pequeño's actions as an immediate threat of death or serious bodily injury. [DASOF ¶ 8].

## II.   THE MESA DEFENDANTS ARE ENTITLED TO ASSERT APPLICABLE STATUTORY DEFENSES AND IMMUNITIES UNDER ARIZONA LAW.

### A.   The Individual Defendants' Conduct Was Justified Under State Law.

The City of Mesa raised the following justification defenses in this action: § 13-404 (Justification; self-defense); § 13-405 (Justification; use of deadly physical force); § 13-406

---

[6] Again, the individual Defendants were aware that Pequeño was suspected of a robbery during which he reportedly used a handgun. [DSOF ¶ 27].

[7] Plaintiffs point out that none of the occupants of Pequeño's vehicle had a gun in their possession. [PSOF ¶ 35]. However, the individual Defendants only learned of that fact *after* the incident. [*See* PSOF Ex. 2 at 146:1-147:9 (Discussing Det. Pezzelle's actions on the scene following the incident); *See* PSOF Ex. 9 at 93:1-6 ("Q. You don't know if there's a gun in the car? A. I think I was told later there wasn't . . . .")]. At the time Pequeño made a sudden, furtive movement, the individual Defendants were all operating on the reported information that Pequeño may have been armed with a handgun. [DSOF ¶ 63, 112].

6

(Justification; defense of a third person); § 13-409 (Justification; use of physical force in law enforcement); § 13-410 (Justification; use of deadly physical force in law enforcement); and § 13-411 (Justification; use of force in crime prevention; applicability). [*See* Doc. 12]. A party that can establish any of the statutory justification defenses is not subject to civil liability for their conduct. *See* A.R.S. § 13-413.  Importantly, while "a defendant bears the burden of proving a justification defense by a preponderance of the evidence. . .. If a presumption applies, the burden shifts to the plaintiff to produce evidence to rebut the presumption, although the defendant retains the burden of persuasion." *Ryan v. Napier*, 254 Ariz. 54, 64 (2018).

Plaintiffs argue that the City of Mesa is not entitled to any of Arizona's statutory justification defenses found under A.R.S. §§ 13-404 through 13-411. In making that argument, Plaintiffs ignore the facts of this case and warp the meaning of those statutes.  Sections 13-404, -405, and -406 provide that a person is justified in using physical or deadly force when a reasonable person would believe that such force is immediately necessary to protect the person (or, in the case of § 13-406, a third person) from another individual's use of force. Sections 13-409, -410, and -411 set forth the justification defenses within the law enforcement context:

- Section 13-409 states: "A person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist: (1) A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape. (2) Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained. (3) A reasonable person would believe the arrest or detention to be lawful."

- Section 13-410(A) states: "The threatened use of deadly physical force by a person against another is justified pursuant to section 13-409 only if a

reasonable person effecting the arrest or preventing the escape would believe the suspect or escapee is: (1) Actually resisting the discharge of a legal duty with deadly physical force or with the apparent capacity to use deadly physical force; or (2) A felon who has escaped from lawful confinement; or (3) A felon who is fleeing from justice or resisting arrest with physical force."[8]

- Section 13-411(A) states: "A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of arson of an occupied structure under section 13-1704, burglary in the second or first degree under section 13-1507 or 13-1508, kidnapping under section 13-1304, manslaughter under section 13-1103, second or first degree murder under section 13-1104 or 13-1105, sexual conduct with a minor under section 13-1405, sexual assault under section 13-1406, child molestation under section 13-1410, armed robbery under section 13-1904 or aggravated assault under section 13-1204, subsection A, paragraphs 1 and 2."

Here, the Mesa Defendants have met their burden of proving the justification defenses. The individual Defendants are undisputedly justified in using deadly force against Pequeño. Pequeño was engaged in a lengthy and violent crime spree involving an assault, an attempted kidnapping, threatening a bystander, the use of illegal drugs, and flight from police

---

[8] *See also* A.R.S. § 13-410(C) ("The use of deadly force by a peace officer against another is justified pursuant to § 13-409 only when the peace officer reasonably believes that it is necessary: 1. To defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force. 2. To effect an arrest or prevent the escape from custody of a person whom the peace officer reasonably believes: (a) Has committed, attempted to commit, is committing or is attempting to commit a felony involving the use or a threatened use of a deadly weapon. (b) Is attempting to escape by use of a deadly weapon. (c) Through past or present conduct of the person which is known by the peace officer that the person is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay. (d) Is necessary to lawfully suppress a riot if the person or another person participating in the riot is armed with a deadly weapon."); A.R.S. § 13-410(D) ("Notwithstanding any other provisions of this chapter, a peace officer is justified in threatening to use deadly physical force when and to the extent a reasonable officer believes it necessary to protect himself against another's potential use of physical force or deadly physical force.").

officers. Pequeño was reportedly armed with a handgun he had stolen from his girlfriend and had used a knife in during his attempted kidnapping and successful vehicle theft. There were two warrants out for his arrest and the VOU had been advised that he was likely to resort to violence if confronted by police officers.

After locating Pequeño, the individual Defendants made the choice to apprehend him as quickly as possible rather than risk Pequeño's escaping into the streets of Glendale during rush hour where he could inflict even more harm, commit more violent acts, and wreak additional havoc. They attempted to apprehend him on foot, but were unable to locate him. They then determined that the tactic that posed the least risk of harm to Pequeño, his companions, the detectives, and the general public, would be a vehicle containment.

When the detectives initiated the vehicle containment, Pequeño immediately began trying to break free and escape. He rammed his vehicle into the detectives' vehicles in order to create enough space to flee. When his violent efforts appeared unsuccessful, Pequeño made a sudden, furtive gesture towards the center console of his vehicle. Pequeño then began to raise his arms in a way that detectives interpreted as his drawing the handgun with which he was reportedly armed. In that context, the use of deadly force by the law enforcement officers was entirely justified. *See Krause v. County of Mohave*, 2020 WL 2541728, at * 16 (D. Ariz. May 19, 2020), *aff'd* Case No. 20-16189, 2021 WL 1667042 (9th Cir. Apr. 28, 2021) (holding that a suspect's furtive movement while armed with a shotgun justified the officer's use of deadly force regardless of whether the weapon was pointed at him and that Plaintiff's state law claims failed under A.R.S. §§ 13-404, -405, -410, and -414 applied).

In their Motion, Plaintiffs argue that the Mesa Defendants use Pequeño's conduct to justify a use of force against S.L.  However, the evidence is clear that each of the individual Defendants intended to use force solely against Pequeño. [DSOF ¶¶ 117, 119-120, 122, 126-128].[9] The fact that S.L. was ***unintentionally*** struck by Pezzelle's bullet is inapposite to the immunity afforded under the justification statutes and cannot somehow render the

---

[9] As the Mesa Defendants' summary judgment motion shows, no reasonable jury could believe Pezzelle intended to shoot S.L. as required under *Graham* and its progeny. [*See* Doc. 306 at pgs. 16-23].

1    individual Defendants' otherwise-justified conduct in some way unjustified. Indeed, Plaintiffs

2    claim, without citation or explanation, that "[u]nder Arizona's justification statutes, the

3    justification for the use of force **must be** the conduct of the person against whom force is

4    used." [Doc. 303 at 10:17-18]. Plaintiffs go on to claim, again without citation or explanation,

5    that the statute "does not permit a defendant to justify the use of force against one person

6    based on the conduct of another." [*Id.* at 10:18-19]. Plaintiffs make these bald claims without

7    any supporting citation because neither the plain statutory language, nor any court decision or

8    statutory interpretation has ever advanced Plaintiffs' desired application of these statutes.

9    Unsurprisingly, undersigned counsel has not identified a single published decision of an

10    Arizona court or a federal court with jurisdiction, interpreting the justification statutes in the

11    manner Plaintiffs desire. What's more, Defendants did not intend to use force against S.L.

12    because of Pequeño's actions or otherwise; Defendants' use of force was directed at Pequeño,

13    and in response to his actions.

14            To interpret the justification statutes as Plaintiffs desire would also cut against

15    their purpose and aim. *See State v. Thomason*, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App. 1989)

16    ("Statutes should be read in the light of their purpose, and should not be construed without

17    regard to their aim."); *see also State v. Thomason,* 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.

18    1989) ("A statute should be explained in conjunction with other statutes which relate to the

19    same subject or have the same general purpose.") (*citing State ex rel. Larson v. Farley*, 106 Ariz.

20    119, 471 P.2d 731 (1970)).   The purpose of Arizona's justification statutes is to create a

21    framework for assessing the contexts in which an individual's or a law enforcement officer's

22    use of force is justified and immunized from liability. The intent of these statutes is to provide

23    protection from civil liability when the actor's conduct is justified (regardless of their end

24    result). That much is eminently clear. Indeed, existing authority and other provisions of the

25    justification statutory scheme point directly contrary to Plaintiffs' argument.   The Arizona

26    Supreme Court, in *Ryan v. Napier*, 245 Ariz. 54, 63, ¶ 36, 425 P.3d 230, 239 (2018), citing A.R.S.

27    § 13-413, held that "civil liability cannot be imposed on a law enforcement officer for 'engaging

28    in [justified] conduct,' **regardless of the theory of recovery**." (emphasis added).   In other

1  words, so long as the conduct at issue was justified against Pequeño under one (or all) of the

2  justification statutes, Plaintiffs' theory of recovery (i.e., on behalf of S.L.) cannot change the

3  immunity afforded under § 13-413.

4         Again, the individual Defendants were placed in a situation where any

5  reasonable person would believe that the use of deadly force was immediately necessary to

6  stop Pequeño from hurting one of the VOU detectives, from committing any additional

7  felonies, or from escaping from the vehicle containment and fleeing. That S.L. was

8  inadvertently struck with deadly force intended for and justified against Pequeño does not

9  remove the immunity afforded by the justification statues.  Rather, the purpose and intent of

10 the justification statutes would be fulfilled by providing the individual Defendants with

11 protection from civil liability for this justified conduct.

12        Accordingly, the justification statutes apply here and the Mesa Defendants are

13 entitled to assert those affirmative defenses in this action.  The Court should deny Plaintiffs'

14 Motion on this basis.

15     **B.    The Mesa Defendants Have Not Waived Their Statutory Defenses Under A.R.S. § 12-820.**

16

17        Plaintiffs also argue that the City of Mesa waived the absolute immunity defense

18 provided by A.R.S. § 12-820.05 by failing to affirmatively state it in its Answer. That is not

19 accurate. In reality, the Mesa Defendants asserted all the privileges and immunities set forth

20 in A.R.S. § 12-820 *et. seq.* "***including absolute and qualified immunity*** arising out of this

21 incident." [*See* Doc. 12 at 36:3-4 (emphasis added)]. Thus, Plaintiffs' claim that the City of

22 Mesa failed to affirmatively assert that defense in its Answer is clearly and unequivocally false.

23        Plaintiffs further claim that the Mesa Defendants failed to assert the defense of

24 state law immunities throughout the three years of litigation. That, too, is false. The Mesa

25 Defendants explicitly asserted all state law immunities and protections in their very first

26 Responses to Mandatory Initial Discovery Pilot Program Requests which were served on April

27 5, 2019. [*See* DASOF ¶ 11]. Those same defenses appeared in each and every one of the Mesa

28 Defendant's subsequent MIDP Responses, culminating in the Mesa Defendant's Twenty-

Second Supplemental Responses, which were served on March 2, 2021. [*See* DASOF ¶ 12]. In

11

9412176.1

fact, the Mesa Defendants asserted state law privileges and immunities as defenses in their Initial Disclosure Statement served pursuant to Arizona Rule of Civil Procedure 26.1 before this action was even removed to this Court. [*See* DASOF ¶ 13]. Thus, the Mesa Defendants have clearly, and repeatedly, asserted the state law immunity defenses throughout this litigation. As before, Plaintiffs' assertion that the Mesa Defendants have failed to assert these defenses is unequivocally false.

Plaintiffs claim that the Mesa Defendants waived state law immunity defenses by omitting them from their Answer and failing to assert them throughout the litigation. Both of those claims are false. As those claims are false and given the Mesa Defendants' clear and repeated assertion of those defenses in their Answer and each of their subsequent 21 Supplemental MIDP Responses, they certainly have not waived those defenses. Accordingly, Plaintiffs are not entitled to summary judgment on those immunity defenses.

Finally, Plaintiffs' argument that no provision of A.R.S. § 12-820.02 applies here is also wrong. A.R.S. § 12-820.02(A)(1) provides the individual defendants qualified immunity for "[t]he failure to *make an arrest* or the failure to retain an arrested person in custody." (Emphasis added). Plaintiffs argue that Defendants should have arrested Pequeño in the apartment before he got into the car with S.L., or should have made an arrest after they drove off and S.L. was not with him anymore. As a result, Plaintiffs are arguing that Defendants have liability for failing to timely arrest Pequeño. It is for a jury to decide if this applies or not based on the facts and evidence in the record. In any event, under the facts interpreted in the light most favorable to Defendants, this is a viable defense for trial.[10]

C.   **The Arizona Constitution Forbids Granting Summary Judgment On The Affirmative Defense Of Assumption Of The Risk.**

Finally, Plaintiffs assert that they are entitled to summary judgment on the affirmative defense of "assumption of the risk." Plaintiffs conduct an element-based analysis of the assumption of the risk defense and conclude by arguing that summary judgment should

---

[10] The Mesa Defendants note that Plaintiffs' Motion does not argue that A.R.S. § 12-820.05 is inapplicable to the facts of this case – just that it was not asserted as an affirmative defense. [*See* Doc. 303 at 14-15]. As a result, the Mesa Defendants limit their response to the issue raised in Plaintiffs' briefing before the Court, as incorrect as it is.

be granted on that defense. In so arguing, Plaintiffs seek an outcome that would defy the Constitution of the State of Arizona. Article 18, Section 5 of the Arizona Constitution provides that "[t]he defense of contributory negligence or of assumption of the risk shall, *in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.*" (emphasis added). Arizona courts have held that the jury is the "sole arbiter of the existence or non-existence" of assumption of the risk, and that the jury alone should decide whether to apply that doctrine. *See Heimke v. Munoz,* 470 P.2d 107, 109, 106 Ariz. 26, 28 (1970) (overruled on other grounds); *Brannigan v. Raybuck,* 667, P.2d 213, 218 136 Ariz. 513, 518 (1983). In fact, the Arizona Court of Appeals has determined that it is constitutionally forbidden for Arizona courts to enter summary judgment on assumption of the risk grounds. *See Estes v. Tripson*, 932 P.2d 1364, 1365–66, 188 Ariz. 93, 94–95, (Ct. App. 1997) (citing *Brannigan*, 667 P.2d at 218, 136 Ariz. at 518).

Accordingly, the relief that Plaintiffs seek with respect to this affirmative defense runs contrary to the clear and express mandates of Arizona's Constitution and existing authority interpreting it. Summary judgment on the affirmative defense of assumption of the risk must also be denied.

### D. Whether Statutory Qualified Immunity Is Properly Raised Is An Issue That Should Be Determined In Connection With Any Pretrial Proceedings.

Plaintiffs' argument that Arizona's statutory qualified immunity defenses are inapplicable here is premature. Before filing their Motion, Plaintiffs did not meet and confer with the Mesa Defendants regarding the defenses they would assert at trial. In a responsive pleading, defendants must afford themselves flexibility to adapt to changes in case facts and must avoid the risk of waiver of defenses if they are not properly preserved. Thus, it is generally a matter at the time of trial what defenses will or will not be advanced based on the Plaintiffs' trial arguments and the remaining claims. Accordingly, determining the applicability of state law statutory qualified immunity here is improper. Rather, it is a matter that can be properly and more timely raised in connection with pretrial proceedings and/or motions in limine.[11]

---

[11] The Mesa Defendants in no way concede, and neither do Plaintiffs argue, that state law *common law* qualified immunity would not apply here. *See* Doc. 306 at pg. 30; *see also*

13

E.   <u>Summary Judgment is Inappropriate on A.R.S. §§ 12-712 and -716.</u>

Arizona Revised Statute § 12-712(A) states that a defendant is not civilly liable if the defendant proves that "the decedent was attempting to commit, committing or immediately fleeing from a felony criminal act and as a result of that act, attempted act or flight the claimant or decedent was at least fifty per cent responsible for the accident or event that caused . . . decedent's harm." Arizona Revised Statute § 12-716(A) provides that "[i]f the court finds by a preponderance of the evidence that a Plaintiff is harmed while the plaintiff is attempting to commit, committing or fleeing after having committed or attempting to commit a felony criminal act…an officer is presumed to have reasonably used physical or deadly force to protect himself or another person, effect an arrest, or prevent an escape, as well as having been reasonably hired and trained to use physical and deadly force. Plaintiffs argue that summary judgment should be granted on these affirmative defenses and that the Mesa Defendants should be barred from asserting them in this action. As this Court is well aware, summary judgment is only appropriate when the moving party can establish that there is no genuine dispute as to any material fact. *See* Fed.R.Civ.P. 56(a). Here, the material facts are disputed such that the applicability of A.R.S. §§ 12-712 and -716 is a question to be decided by the jury.

Prior to the vehicle containment, Pequeño had committed a number of felony offenses, including attempted kidnapping (A.R.S. § 13-1304), aggravated assault (A.R.S. § 13-1204), vehicle theft (A.R.S. § 13-1904) and the use of heroin and methamphetamines (A.R.S. § 13-3408), among others. *See* DSOF ¶¶ 35-38, 52-53. When Det. Walag entered the parking lot of the apartment complex, he drove past S.L. with his window down. *See* DSOF ¶ 70. When he did so, S.L. looked into his vehicle and incorrectly indicated to Pequeño and Sandoval-Rosa that Det. Walag was not a police officer. *Id.* S.L. appeared to be acting as a lookout to identify any undercover police officers to Pequeño and Sandoval-Rosa. *Id.*

---

*Portonova v. Wilkinson*, 627 P.2d 232, 234, 128 Ariz. 501, 503 (1981) ("It has been recognized that in Arizona a police officer acting within the scope of his authority has at least a conditional immunity from civil liability.") (citing *Patterson v. City of Phoenix*, 426 P.2d 613, 619-620, 103 Ariz. 64, 70-71) (1969)); *Chamberlain v. Mathis*, 729 P.2d 905, 909, 912, 151 Ariz. 551, 555, 558 (1986); *Spooner v. City of Phoenix*, 435 P.3d 465, 466-67, 246 Ariz. 119, 123-24 (App. 2018).

14

Given S.L.'s actions, there is a question of whether or not she was guilty of aiding or attempting to aid Pequeño, a felon, in evading police officers. If indeed, S.L. was aiding or attempting to aid Pequeño, she may have been guilty of a felony under A.R.S. § 13-303. It remains a question of fact as to whether S.L.'s actions would have rendered her guilty under that statute. Moreover, it is a question of fact whether S.L. smoked methamphetamine on April 20, 2017. Given the findings of the antemortem toxicology report, Dr. Beckson concludes that it is more probable than not that S.L. was under the influence of methamphetamine. *See* DASOF ¶ 6. Dr. Beckson also concluded that it would be improbable for S.L.'s blood methamphetamine concentration to be the result of mere secondhand smoke. *See* DASOF ¶ 5. To the extent S.L. smoked methamphetamine, she, like Pequeño, would have violated A.R.S. § 13-3408. Questions of fact remain, therefore, summary judgment on the defenses of A.R.S. §§ 12-712 and -716 is inappropriate.

F. **The Mesa Defendants Concede That The Affirmative Defense Asserted In A.R.S. §§ 12-711 Is Inapplicable Here.**

When the Mesa Defendants drafted and filed their Answer in this action, they did so without the benefit of what discovery in this action would reveal. Therefore, they asserted all those affirmative defenses they reasonably believed might be implicated in this action based on the initial officer reports and after conferring with their clients regarding the subject incident, as is their right under Fed.R.Civ.P. 8(d)(2). Included in these hypothetical and/or alternative defenses was the affirmative defense afforded by A.R.S. §§ 12-711. Having now completed a length discovery process, the Mesa Defendants are now aware that this statutory defense is inapplicable to facts of this case. Accordingly, the Mesa Defendants concede that based on the facts of this case, they will not assert the affirmative defense of A.R.S. §§ 12-711.[12]

---

[12] Had Plaintiffs met and conferred with Defendants on this subject prior to filing their instant summary judgment motion, the parties could have avoided the needless expense of briefing this issue and bringing it before the Court.

15

9412176.1

III.     **CONCLUSION**

With the exception of the Mesa Defendants' affirmative defense under A.R.S. §§ 12-711, the Mesa Defendants request that the Court deny Plaintiffs' Motion for Partial Summary Judgment and find, as a matter of law, that the Mesa Defendants are permitted to assert the justification defenses, state law qualified immunity, state law absolute immunity, and assumption of the risk.

DATED this 21st day of May, 2021.

JONES, SKELTON & HOCHULI, P.L.C.


By  /s/ Ian C. Beck
    John T. Masterson
    Joseph J. Popolizio
    Justin M. Ackerman
    Ian C. Beck
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    City of Mesa, Michael Pezzelle, James
    Pollard, Hoapili Baker, Jalyn Bellows,
    William Jones, Brandon Ekren, Andrew
    Walag, and Donald Rudd

9412176.1

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this 21ˢᵗ day of May, 2021, I caused the foregoing

3

document to be filed electronically with the Clerk of Court through the CM/ECF System for

4

filing; and served on counsel of record via the Court's CM/ECF system.

5   Joel B. Robbins
    Jesse M. Showalter
6   Lauren E. Channell
    Anne E. Findling
7   Robbins & Curtin, P.L.L.C.
    301 East Bethany Home Rd., Suite B-100
8   Phoenix, Arizona 85012
    joel@robbinsandcurtin.com
9   jesse@robbinsandcurtin.com
    lauren@robbinsandcurtin.com
10  anne@robbinsandcurtin.com
    Attorneys for Plaintiffs
11
    John P. Torgenson
12  Torgenson Law
    333 W. Roosevelt St.
13  Phoenix, Arizona 85003
    jtorgenson@torgensonlaw.com
14  Attorney for Plaintiffs

15  J. Randall Jue
    Chandler City Attorney's Office
16  P.O. Box 4008, MS602
    Chandler, Arizona 85244-4008
17  Randy.Jue@chandleraz.gov
    Attorney for City of Chandler
18  and Garrett Dever

19

20  /s/Karen Gawel

21

22

23

24

25

26

27

28

17

9412176.1