Joel B. Robbins, Esq. (011065)
Anne E. Findling, Esq. (010871)
Jesse M. Showalter, Esq. (026628)
Lauren E. Channell, Esq. (033484)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
Fax: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com
jesse@robbinsandcurtin.com
lauren@robbinsandcurtin.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jennifer Lane, *et al.*,<br><br>            Plaintiffs,<br><br>  vs.<br><br>City of Mesa, *et al.*,<br><br>            Defendants. | No. 2:19-cv-00852-SMB<br><br>**PLAINTIFF'S RESPONSE TO CHANDLER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 309)**<br><br>**(Oral Argument Requested)** |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

# TABLE OF CONTENTS

I.   Factual Background ................................................................................. 1

   A.   The Officer Defendants surveil Brandon Pequeño and track him to
        a Glendale apartment complex. ................................................... 1

   B.   The Officer Defendants decide to seize Pequeño with a "vehicle
        containment" despite the known risks to the passengers in the
        Corolla ................................................................................................ 3

   C.   Chandler Detective Garrett Dever initiates the "vehicle
        containment," trapping S.L. in the Corolla and setting into motion
        the events that culminate in S.L.'s death. ........................................ 5

   D.   The City of Chandler did not train or supervise Dever in his work
        with the Task Force. ................................................................... 7

II.  Legal Analysis ............................................................................................ 8

   A.   The City of Chandler is not entitled to summary judgment on
        Plaintiff's state law wrongful death claim (Count One). ....................... 8

        1.   Dever's assault and battery against S.L. is an appropriate
             basis for Plaintiff's wrongful death claim. ....................................... 8

        2.   The City of Chandler is vicariously liable for Dever's assault
             and battery or negligence ................................................................ 11

        3.   The City of Chandler is not entitled to summary judgment
             on Plaintiff's wrongful death claim based on Chandler's
             negligence or gross negligence ....................................................... 11

             a.   There are disputed issues of fact regarding whether
                  the City was negligent or grossly negligent in training
                  or supervising Dever with respect to his work on the
                  Task Force .......................................................................... 11

             b.   The City of Chandler owes a duty of care to members
                  of the public who are seized by is officers ............................ 14

             c.   A reasonable jury can conclude that the City's breach
                  of its duty of care was a proximate cause of S.L.'s
                  death .................................................................................. 14

**TABLE OF CONTENTS**

4.    The Chandler Defendants are not entitled to statutory defenses and presumptions under A.R.S.§§ 12-711, 12-712, 12-716, 13-404, 13-405, 13-406, 13-409, 13-411, or 13-413 ........................................................................................ 15

5.    There are facts supporting joint and several liability because the Officer Defendants knowingly agreed to commit a battery when they decided to execute the vehicle containment. ................................................................... 16

B.    Dever is not entitled to qualified immunity on the Fourth Amendment claim (Count Two) .............................................. 17

1.    Plaintiff's claim that law enforcement officers used excessive force to effect the seizure of S.L. is governed by the Fourth Amendment's reasonableness standard ........................ 17

2.    A reasonable jury could find that the use of the vehicle containment technique was objectively unreasonable and violated the Fourth Amendment ...................................................... 18

3.    Dever was an integral participant in the violation of S.L.'s Fourth Amendment rights. ................................................................ 20

4.    There are significant questions of fact regarding whether Pezzelle, Pollard, and Baker's use of deadly force was reasonable ........................................................................................ 21

5.    S.L.'s right to be free from excessive force as a passenger in a vehicle that posed no risk to police was clearly established long before April 20, 2017 ............................................................ 25

C.    Dever is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment familial association claim (Count Four) because he initiated the vehicle containment knowing that S.L. would be trapped in the Corolla for the anticipated "shootout." ............................... 26

D.    Chandler is not entitled to summary judgment on Plaintiff's *Monell* claim (Count Six) ...................................................................... 27

E.    Dever is not entitled to summary judgment on Plaintiff's claim for punitive damages ........................................................................ 30

III.    Conclusion ........................................................................................ 31

# TABLE OF AUTHORITIES

## Cases

*Acosta v. City & County of San Francisco*,
  83 F.3d 1143 (9th Cir. 1996) ........................................................................ 25, 26

*Bergman by Harre v. Anderson*,
  226 Neb. 333, 411 N.W.2d 336 (1987) ........................................................ 9, 10

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ................................................................................ 25

*Board of County Commissioners of Bryan County, Oklahoma v. Brown*,
  520 U.S. 397 (1997) ............................................................................................... 28

*Boomer v. Frank*,
  196 Ariz. 55, 993 P.2d 456 (App. 1999) ........................................................... 12

*Boyd v. Benton County*,
  374 F.3d 773 (9th Cir. 2004) ........................................................................ 20, 21

*Brendlin v. California*,
  551 U.S. 249 (2007) ............................................................................................... 23

*Brower v. Cnty. of Inyo*,
  489 U.S. 593 (1989) ............................................................................................... 23

*Castro v. County of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) ............................................................................. 28

*Chappell v. Wenholz*,
  226 Ariz. 309, 247 P.3d 192 (App. 2011) ........................................................ 16

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ................................................................................... 28, 29, 30

*Clement v. Gomez*,
  298 F.3d 898 (9th Cir. 2002) ............................................................................... 25

*Connick v. Thompson*,
  563 U.S. 51 (2011) ......................................................................................... 28, 29

# TABLE OF AUTHORITIES

*Cunningham v. Gates*,
 229 F.3d 1271 (9th Cir. 2000) ................................................................. 18, 19, 25

*Dang v. Cross*,
 422 F.3d 800 (9th Cir. 2005) .............................................................................. 30

*Dawkins v. Graham,*
 50 F.3d 532 (8th Cir. 1995) ................................................................................ 19

*Duenez v. City of Manteca*,
 2013 WL 6816375, at *2 (E.D. Cal. Dec. 23, 2013) ......................................... 19

*Farmer v. Brennan*,
 511 U.S. 825 (1994) ............................................................................................ 27

*Floyd v. City of Detroit*,
 518 F.3d 398 (6th Cir. 2008) .............................................................................. 19

*Frausto v. Dep't of California Highway Patrol*,
 53 Cal. App. 5th 973 (2020) ............................................................................... 14

*Gibson v. County of Washoe*,
 290 F.3d 1175 (9th Cir. 2002) ............................................................................ 28

*Gipson v. Kasey*,
 214 Ariz. 141, 150 P.3d 228 (2007) ................................................................... 14

*Glenn v. Washington County*,
 673 F.3d 864 (9th Cir. 2011) .............................................................................. 18

*Gonzalez v. City of Anaheim*,
 747 F.3d 789 (9th Cir. 2014) .............................................................................. 26

*Graham v. Connor*,
 490 U.S. 386 (1989) ............................................................................... 17, 18, 22

*Guerra v. State*,
 234 Ariz. 482, 323 P.3d 765 (App. 2014) .......................................................... 12

# TABLE OF AUTHORITIES

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........................................................................... 25

*James ex rel. James v. Sadler*,
909 F.2d 834 (5th Cir.1990) ............................................................. 20

*Jensen v. City of Oxnard*,
145 F.3d 1078 (9th Cir. 1998) .......................................................... 19

*Johnson v. Pankratz*,
196 Ariz. 621, 2 P.3d 1266 (App. 2000) ........................................ 8, 9

*Johnson v. Shasta County*,
83 F. Supp. 3d 918 (E.D. Cal. 2015) .......................................... 28, 30

*Kemp v. Pinal County,*
13 Ariz. App. 121, 474 P.2d 840 (1970) .......................................... 13

*Kuehn v. Stanley*,
208 Ariz. 124, 91 P.3d 346 (App. 2004) .......................................... 12

*Long v. County of Los Angeles*,
442 F.3d 1178 (9th Cir. 2006) .......................................................... 28

*Longoria v. Pinal County*,
873 F.3d 699 (9th Cir. 2017) ............................................................ 26

*McKinley v. Trattles*,
732 F.2d 1320 (7th Cir. 1984) .......................................................... 30

*Merritt v. Cnty. of L.A.,*
875 F.2d 765 (9th Cir. 1989) ............................................................ 28

*Monell v. Dep't of Soc. Services of City of New York*,
436 U.S. 658 (1978) .......................................................................... 28

*Mullenix v. Luna*,
577 U.S. 7 (2015) .............................................................................. 23

*Nichols v. Baker*,
101 Ariz. 151, 416 P.2d 584 (1966) ................................................. 13

# TABLE OF AUTHORITIES

*Ontiveros v. Borak,*
    136 Ariz. 500, 667 P.2d 200 (1983) .................................................................. 11

*Orn v. City of Tacoma,*
    949 F.3d 1167 (9th Cir. 2020) ............................................................. 22, 23, 26

*Pfeil v. Smith,*
    183 Ariz. 63, 900 P.2d 12 (App. 1995) ........................................................... 15

*Plumhoff v. Rickard,*
    572 U.S. 765 (2014) ........................................................................................ 17

*Porter v. Osborn,*
    546 F.3d 1131 (9th Cir. 2008) ........................................................................ 26

*Robertson v. Sixpence Inns of Am., Inc.,*
    163 Ariz. 539, 789 P.2d 1040 (1990) ................................................... 10, 11, 15

*Ryan v. Napier,*
    245 Ariz. 54, 425 P.3d 230 (2018) ............................................................. 9, 10

*Stanley v. McCarver,*
    208 Ariz. 219, 92 P.3d 849 (2004) .................................................................. 14

*Stoddard-Nunez v. City of Hayward,*
    817 Fed. Appx. 375 (9th Cir. 2020) ............................................................... 25

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ................................................................................. 17, 18, 22

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011) .................................................................. 19, 26

*Vasquez v. State,*
    220 Ariz. 304, 206 P.3d 753 (App. 2008) ....................................................... 14

*Vaughan v. Cox,*
    343 F.3d 1323 (11th Cir. 2003) ...................................................................... 23

*Villanueva v. California,*
    986 F.3d 1158 (9th Cir. 2021) ..................................................... 22, 23, 24, 25

## TABLE OF AUTHORITIES

*Wall v. County of Orange*,
    364 F.3d 1107 (9th Cir. 2004) ........................................................... 25

*Walls v. Arizona Dept. of Pub. Safety*,
    170 Ariz. 591, 826 P.2d 1217 (App. 1991) ....................................... 13

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010) ...................................................... 26, 27

Federal Law

42 USC § 1983 ...................................................................... 10, 27

State Law

A.R.S. § 12-612 ........................................................................ 10

A.R.S. §12-711 ......................................................................... 16

A.R.S. § 12-712 ........................................................................ 16

A.R.S. § 12-716 ........................................................................ 16

A.R.S. § 12-2506(D) .................................................................. 16

A.R.S. § 12-2506(D)(1) .............................................................. 16

A.R.S. § 12-2506(F)(1) ............................................................... 16

A.R.S. § 13-404 ........................................................................ 15

A.R.S § 13-405 ......................................................................... 15

A.R.S § 13-406 ......................................................................... 15

A.R.S 13-409 ........................................................................... 15

A.R.S § 13-411 ......................................................................... 15

# TABLE OF AUTHORITIES

A.R.S § 13-413 ................................................................................. 15

A.R.S. § 14-3110 ............................................................................. 10

Rules

Rule 8(d)(2) of the Federal Rules of Civil Procedure ................................................ 13

Secondary Sources

Restatement (Second) of Torts § 8A cmt. A ................................................ 9

Restatement (Second) of Torts § 13 (1965) ................................................ 8

Restatement (Second) of Torts § 19 ........................................................ 9, 10

Restatement (Second) of Torts § 20 ........................................................ 9

Restatement (Second) of Torts § 21 (1965) ................................................ 8

Restatement (Second) of Torts § 314A(4) ................................................ 14

*Intentional Tort*, Black's Law Dictionary (10th ed. 2014) ........................................ 9

The Chandler Defendants are not entitled to summary judgment on any issue. The nine Officer Defendants decided on a plan to utilize a "vehicle containment" technique to pin the Toyota Corolla driven by Brandon Pequeño with the knowledge that two innocent passengers, including 17-year-old S.L., would be trapped inside for the "shootout" the Officers expected would occur. Chandler Detective Garrett Dever was responsible for initiating the vehicle containment. He placed his truck in reverse and backed into the front of the Corolla. He gave the verbal command for other Officers to move into place. He kept his truck in contact with the Corolla, pinning it in, as other Officer Defendants fired at the three unarmed occupants, shooting and killing S.L.

The City of Mesa assigned Dever to work with the Task Force and knew he would be apprehending violent felons. The City trained him to use vehicle containments to seize suspects and non-suspects alike, but never trained him to minimize the risk of harm to innocent passengers, and did not supervise his work or even require him to report what he was doing to his Chandler supervisor.

On Plaintiff's state law wrongful death claim, a jury can find that Chandler is vicariously liable for the conduct of Garrett Dever, who caused S.L.'s death through his intentional acts that amount to assault and battery. A jury can also find that Chandler was negligent or grossly negligent in its failures to train and supervise Dever.

On Plaintiff's civil rights claims, a jury could reasonably find that Dever violated S.L.'s Fourth Amendment rights and Plaintiff's Fourteenth Amendment right to familial association. A jury can find that Chandler was deliberately indifferent in its training and supervision of Dever.

The Chandler Defendants' motion for summary judgment should be denied.

## I.   Factual Background

### A.   The Officer Defendants surveil Brandon Pequeño and track him to a Glendale apartment complex.

On April 10, 2017, a probation officer called Mesa Police Detective Michael Pezzelle regarding two probation warrants for Brandon Pequeño and asked whether he would assist

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

in Pequeño's apprehension. *See* Plaintiff's Response and Controverting Statement of Facts (PCSOF), ¶ 51. Pezzelle remembered Pequeño from a previous interaction and agreed to have the East Valley Violent Offenders Task Force[1] apprehend him. *Id.*, ¶ 53. The probation officer sent Pezzelle an email with additional information about Pequeño, including his last known address and place of employment, and that his ex-girlfriend, Frances Gomez, had reported that Pequeño had stolen her Glock .380 on March 27 or 28, 2017. *Id.*, ¶ 54.

On April 20, 2017, a Chandler police officer contacted Pezzelle and informed him that Pequeño had assaulted and attempted to kidnap Frances, threatened a bystander with a knife, and then fled the scene in Frances' 2017 Toyota Corolla. *Id.*, ¶ 55. Pezzelle and Chandler Detective Garrett Dever both drove to Frances' residence in Chandler to investigate. Other officers were already present when they arrived. *Id.*, ¶ 56.

Pezzelle interviewed Frances and repeatedly asked her whether Pequeño still had her gun. Although Pezzelle claims Frances told him that Pequeño still had the gun, Frances testified that she repeatedly stated that Pequeño no longer had the gun and had sold it. *Id.*, ¶¶ 57-8. Frances asked Pezzelle why he kept asking about the gun over and over, to which he replied that he wanted "to be on the safe side and make sure [Pequeño] didn't have a gun." *Id.*, ¶ 59. Frances explained to Defendant Pezzelle and the other officers that Pequeño had not left her house with a gun, and she expressed concern that Pequeño "felt like if he was going to go it was going to be by the police." *Id.*

Dever spoke to Frances at the scene and does not recall hearing Frances or Pezzelle talk about the gun but claims he learned that Pequeño had the Glock .380. *Id.*, ¶ 60. However,

---

[1]     Pezzelle was assigned to Mesa Police Department's Violent Offenders Unit ("VOU") and worked with the East Valley Violent Offenders Task Force ("the Task Force"), a task force including officers from Mesa, Tempe, and Chandler, the Pinal County Sheriff's Office, and the United States Marshals Service. Mesa police officers James Pollard, Hoapili Baker, Jalyn Bellows, William "Chip" Jones, Brandon Ekren, Andrew Walag, and Donald Rudd were also assigned to the VOU, and Chandler Police Department Detective Garrett Dever was assigned to the Task Force. PCSOF, ¶ 52. These officers are referred to collectively as the "Officer Defendants."

the other Officer Defendants testified that Pezzelle told them that Pequeño had the gun and that he would engage in a "shootout" with the officers if they tried to apprehend him. *Id.*, ¶ 61.

Meanwhile, Pequeño drove the Toyota Corolla to the residence of 17-year-old S.L. in Phoenix where he picked up S.L. and a friend, Damien Sandoval Rosa. *Id.*, ¶ 62. Pequeño drove S.L. and Damien to an apartment complex at 5220 West Northern Avenue in Glendale where Damien lived with his brother. *Id.*, ¶ 63.

The Officer Defendants used Pequeño's cell phone to track him to the parking lot of the apartment complex. *Id.*, ¶¶ 64, 68. They began arriving at the apartment complex at approximately 6:15 p.m.—more than two hours after the incident in Chandler. Defendant Walag observed Pequeño, S.L., and Damien get out of the Toyota Corolla, and he radioed to the other Officer Defendants that Pequeño was with an "orange haired" female (although S.L. had dark hair) and another Hispanic male. *Id.*, ¶ 65. One of the males jumped onto a wall in the parking lot. Defendant Walag believed it was Pequeño on the lookout for police, but it was actually Damien who had jumped on the wall to mess around. *Id.*, ¶ 66. S.L. and Damien entered the complex together and walked to apartment unit 1313. Pequeño walked the opposite direction but met them at unit 1313 a couple minutes later. *Id.*, ¶ 67.

**B.     The Officer Defendants decide to seize Pequeño with a "vehicle containment" despite the known risks to the passengers in the Corolla.**

While Pequeño, S.L., and Damien were inside the apartment, the Officer Defendants discussed arresting Pequeño. The Officer Defendants could track Pequeño's cellphone and could have followed him to another location, but Sergeant Bellows, one of the Task Force supervisors, suggested a "vehicle containment" to seize Pequeño in the parking lot. *Id.*, ¶ 68. The Officer Defendants were not aware of any exigent circumstances that justified the seizure of S.L. and Damien in addition to Pequeño; however, Lieutenant Rudd, another Task Force supervisor, "gave the okay" for the vehicle containment to be executed and stated that he did not want the Toyota Corolla to leave the apartment complex. *Id.*, ¶ 75. Dever

volunteered to perform the front block if the Toyota Corolla used the much narrower exit onto Northern Avenue. *Id.*, ¶ 76.

A vehicle containment is an intentional car crash. It is a law enforcement tactic emphasizing "speed, surprise and violence of action." Officers suddenly and without warning ram and box in a subject vehicle from all four sides so that the subject vehicle and its occupants are immediately immobilized. *Id.*, ¶ 69. In a vehicle containment, police position unmarked vehicles in front of and behind the subject vehicle. The vehicle containment is initiated by having the "front block" vehicle drive in reverse and ram the front bumper of the subject vehicle. *Id.*, ¶ 70. The "rear block" vehicle then moves into position by ramming the subject vehicle's back bumper. *Id.* Once the "front block" and "rear block" vehicles are in position, the "left and right blocks" move in and pin the sides of the subject vehicle so its doors cannot be opened, and its occupants are trapped within. *Id.* Because of the risks involved, vehicle containments are reserved for apprehending felony suspects with a history of violence or flight from law enforcement and should be one of the last methods rather than the primary method of effecting an arrest. *Id.*, ¶ 72.

Mesa Police Department policies required the Task Force to conduct a briefing before initiating a vehicle containment to discuss ways to minimize the risks to passengers and assign responsibilities to the officers, among other things. *Id.*, ¶ 71. But no such briefing was conducted prior to this containment. The Officer Defendants did not discuss how to minimize the risk of harm to the two passengers in the Toyota Corolla, nor did they plan for the use of force after the containment, use of force commands, or communication with the people inside the Corolla. *Id.*, ¶ 77.

After spending time in the apartment, Pequeño, S.L., and Damien returned to the parking lot and got into the Corolla. *Id.*, ¶ 78. They did not know it, but Pequeño, S.L., and Damien were surrounded by the undercover Officer Defendants, who were in the parking lot in unmarked vehicles. *Id.*, ¶ 79. The Officer Defendants knew that Pequeño was in the driver's seat, the unknown male (Damien) was in the front passenger seat, and the unknown female (S.L.) was in the rear passenger seat. *Id.*, ¶ 80.

Dever and the other Officer Defendants were not aware of any information that would lead a reasonable officer to believe that it was necessary to use force of any kind against S.L. *Id.*, ¶ 81. They did not suspect S.L. of committing any crime. *Id.*, ¶ 82. She had not threatened or attempted to assault any officer, and she did not pose a threat to anyone. *Id.*, ¶ 83. She had not attempted to flee or resist arrest. *Id.*, ¶ 85. She was not armed with any kind of weapon, and the Officer Defendants had no reason to believe her to be armed. *Id.*, ¶ 84. In fact, none of the occupants of the Toyota Corolla had a gun. *Id.*, ¶ 86.

Dever and the other Officer Defendants knew that if they attempted to seize Pequeño while S.L. and Damien were in the Toyota Corolla with him, S.L. and Damien would be trapped in the Corolla with a person whom the Officer Defendants believed was going to "shoot it out with the police." *Id.*, ¶ 73, 87. Despite knowing the risks S.L. would face during the containment and the anticipated "shootout," and even though they did not suspect her of any wrongdoing, the Officer Defendants decided to execute the "vehicle containment." *See id.*, ¶ 74.

## C.   Chandler Detective Garrett Dever initiates the "vehicle containment," trapping S.L. in the Corolla and setting into motion the events that culminate in S.L.'s death.

Pequeño drove toward the exit onto Northern Avenue. *Id.*, ¶ 88. Dever, in an unmarked Dodge Ram, was stopped at the exit and blocked the Corolla from leaving. *Id.*, ¶ 89. Pequeño stopped the Corolla behind Dever's truck. *Id.*, ¶ 90.

Because he was the "front block" and was positioned directly in front of the Corolla, Dever was responsible for initiating the vehicle containment. *Id.*, ¶ 91. He also had the ability to call off the containment. *See id.*, ¶ 30. Dever gave the command to "move" over the radio, shifted his Dodge Ram into reverse, and quickly backed into the front of the Toyota Corolla. *Id.*, ¶ 92.

Pollard, the "rear block," used his unmarked Toyota 4Runner to ram the Corolla's rear bumper. *Id.*, ¶ 93.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Pequeño, S.L., and Damien were shocked and alarmed by the vehicle containment. Damien initially thought that someone had unintentionally rear-ended the Corolla and opened the front passenger door to try to see what had happened. He realized that they were being surrounded by unmarked vehicles with their police lights activated. An officer yelled at him to get back in the vehicle and put his hands up, and Damien sat back down and closed the door. *Id.*, ¶ 94.

Ekren and Walag, the "side blocks," then pulled their unmarked police vehicles into position along the left and right sides of the Toyota Corolla, respectively. *Id.*, ¶ 95. Ekren and Walag used their vehicles to make contact with either side of the Corolla, so none of the doors could be opened. *Id.*, ¶ 96.

In response to the vehicle containment, Pequeño revved the Corolla's engine a single time, but the vehicle containment had been successful in pinning and immobilizing the Corolla, so it could not move or escape. *Id.*, ¶ 97, 111. Pequeño realized that the Corolla was immobilized and shifted it into park. *Id.*, ¶ 98.

The Officer Defendants surrounded the Corolla with their weapons drawn and began shouting commands over each other, including "Police" and "Put your hands up!" *Id.*, ¶ 99. Within seconds, Jones, Pezzelle, Pollard, and Baker began firing lethal and less lethal rounds into the Corolla. *Id.*, ¶ 100-102, 112, 115-116.

Pezzelle was on the passenger side of Walag's vehicle. He was using the engine block as cover. He was facing the rear passenger door of the Toyota Corolla. *Id.*, ¶ 103. Pezzelle could see S.L. in the backseat, and he could see Pequeño's silhouette after the front driver's side window was broken by Jones' beanbag rounds. *Id.*, ¶ 105.

Inside the Corolla, Pequeño looked back at the Officer Defendants positioned behind the Corolla then raised his hands in the air. *Id.*, ¶ 106. Pequeño was shouting, "our fucking hands are up, our fucking hands are up!" *Id.*, ¶ 107. Pezzelle saw Pequeño rotate his body to look around at the officers then raise his hands, which were empty. *Id.*, ¶ 108.

As Pequeño's hands were raised, he leaned to the right over the center console, presumably to distance himself from the beanbag rounds that were being fired into his

window or because he had already been shot. *Id.*, ¶ 109. He was bleeding from his right shoulder. *Id.*

Pezzelle saw that Pequeño was not holding a gun, weapon, or anything else. *Id.*, ¶ 110. Pezzelle intentionally aimed his gun at the rear passenger side window, where he knew S.L. was sitting, and fired five rounds through the window. *Id.*, ¶ 112.

Pezzelle's first shot struck S.L. in the head. *Id.*, ¶ 114. The entire bullet hit her head and penetrated her scalp. *Id.*

After the shooting stopped, Walag had to back up his vehicle so the passenger side doors of the Corolla could be opened and S.L. could be removed from the car. *Id.*, ¶ 118-119. Paramedics transported S.L. to a hospital. She died on April 21, 2017 from the gunshot wound inflicted by Defendant Pezzelle. *Id.*, ¶ 123.

### D. The City of Chandler did not train or supervise Dever in his work with the Task Force.

Plaintiff's police practices expert, Scott DeFoe has opined that the Officer Defendants' use of the vehicle containment technique was not reasonable because of S.L. and Damien's presence in the vehicle with Pequeño. Mr. DeFoe also concluded that Sergeant Bellows and Lieutenant Rudd acted unreasonably as supervisors for the Task Force by failing to implement an alternative plan (such as a K9 or Special Weapons Unit) for apprehending Pequeño in lieu of utilizing the vehicle containment and for failing to implement a tactical plan before the containment. *Id.*, ¶ 125.

According to Mr. DeFoe, the Task Force members, including the Officer Defendants, failed to conduct scenario-based training that involved contingencies and tactics for when the subject vehicle contained individuals who were not suspected of committing a crime but the decision was made to utilize a vehicle containment. *Id.*, ¶ 126. In his opinion, the Task Force's training was inadequate because it did not replicate, as closely as possible, scenarios that officers could expect to encounter in the field, which is especially critical with respect to vehicle containments that may involve innocent parties inside of a vehicle. *Id.*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

In his deposition, Dever testified that he was trained by both the City of Chandler and the City of Mesa that an intermediate level of force (such as a vehicle containment) could be used to seize a vehicle that contained a suspect as well as a non-suspect. *Id.*, ¶ 127. Dever also testified that he had never received any training from either Chandler or Mesa on how to minimize the risk to rear seat passengers during vehicle containments. *Id.*, ¶ 127.

While he was assigned to the Task Force, Dever had an immediate supervisor, Sergeant Pete Rowton, at the Chandler Police Department; however, Dever only rarely reported to Sergeant Rowton. Chandler did not require Dever to keep Sergeant Rowton informed of what he was doing with the Task Force. *Id.*, ¶ 128.

## II.   Legal Analysis

### A.   The City of Chandler is not entitled to summary judgment on Plaintiff's state law wrongful death claim (Count One).

#### 1.   Dever's assault and battery against S.L. is an appropriate basis for Plaintiff's wrongful death claim.

Plaintiff's wrongful death claim is premised on Chandler's negligent training and supervision of Dever, as well as Dever's assault and battery against S.L., for which Chandler is vicariously liable. Dever's assault and battery against S.L. are an appropriate basis for Plaintiff's wrongful death claim because Dever intended to cause a harmful or offensive contact with S.L. when he initiated the vehicle containment, placed his truck in reverse, and intentionally rammed the Corolla with the intent to trap S.L. in the Corolla for the expected "shootout" with Pequeño.

A battery occurs when a defendant intentionally causes a harmful or offensive contact with another person. *Johnson v. Pankratz*, 196 Ariz. 621, 623, ¶ 6, 2 P.3d 1266, 1268 (App. 2000) (citing Restatement (Second) of Torts § 13 (1965)). Proof of resulting damage is not an element of the claim. *Id.* An assault occurs when the defendant acts intending to cause a harmful or offensive contact, or an imminent apprehension of such contact, and the other person is placed in such imminent apprehension. Restatement (Second) of Torts § 21 (1965).

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

"As the name suggests, [intentional] torts are committed by persons acting with tortious 'intent.'" *Ryan v. Napier*, 245 Ariz. 54, 59, ¶ 18, 425 P.3d 230, 235 (2018) (citing *Intentional Tort*, Black's Law Dictionary (10th ed. 2014)". "Acting with 'intent' does not refer to the act itself." *Id.* (citing Restatement (Second) of Torts § 8A cmt. a). "It means that 'the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Id.* "Thus, as pertinent here, a battery claim requires proof that the defendant intended to cause harmful or offensive contact with the plaintiff." *Id.* (citing *Johnson*, 2 P.3d at 1268 (App. 2000)). "A bodily contact is offensive if it offends a reasonable sense of personal dignity." Restatement (Second) of Torts § 19.

Dever's arguments that he intended "to trap the Toyota Corolla because Pequeño was inside it" and that he did not intend any harmful or offensive contact with S.L. are unavailing. *See* Chandler Defendants' Motion, Dkt. 309, p. 10. Dever acknowledged that he knew the vehicle containment would trap S.L. inside the Corolla for the anticipated "shootout." PCSOF, ¶¶ 74, 87. He initiated the containment with the intent to trap the Corolla and all its occupants and prevent them from leaving the parking lot. PCSOF, ¶¶ 91-92. Even if he had only intended to trap Pequeño, that intent was transferred to S.L. *See* Restatement (Second) of Torts § 20 ("If an act is done with the intention of affecting a third person . . . but causes an offensive bodily contact to another, the actor is subject to liability to such other as fully as though he intended so to affect him.).

Whether or not Dever intended S.L.'s death is also irrelevant because there is no requirement that a defendant anticipate the precise harm that follows his offensive contact. The intent necessary to support assault and battery claims "may be shown by proof that the defendant intended to physically injure or contact another or intended to cause apprehension that such physical injury or contact is imminent." *Bergman by Harre v. Anderson*, 226 Neb. 333, 337, 411 N.W.2d 336, 339 (1987). "However, such intent contemplates only the intent to cause physical contact or injury or arouse an apprehension of imminent injury, as the

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

assailant need not intend the precise or particular injury which followed as the result of the assault or battery." *Id.*

Damien Sandoval Rosa's testimony that he, S.L., and Pequeño were shocked, alarmed, and frightened when the containment began will allow the jury to conclude that S.L. was in imminent apprehension of offensive contact and that offensive contact did, in fact, occur. There is no question that trapping an innocent young girl in a car for a "shootout" offends a "reasonable sense of personal dignity." *See* Restatement (Second) of Torts § 19. The jury will also find that Dever's intentional conduct caused or contributed to S.L.'s death because without the vehicle containment that he initiated, her death would not have occurred. *See Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990).

Defendants also attempt to confuse Plaintiff's wrongful death claim, brought under A.R.S. § 12-612, with a survival action under A.R.S. § 14-3110. The Court should reject this argument because Plaintiff has not asserted a survival action and is not seeking damages for S.L.'s pre-death pain and suffering as part of her state law claim. Those damages are, however, available under the Estate's § 1983 claims.

Additionally, given the disputed facts regarding Dever's intent, a reasonable jury could conclude that, if he did not intend to make offensive contact with S.L., he was negligent or grossly negligent for doing so. In *Ryan v. Napier*, the Arizona Supreme Court expressly determined that such claims can be brought in tandem with battery claims:

> [P]laintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory. For example, if the evidence here also supported a finding that Klein unintentionally dropped Barry's leash, resulting in the attack against McDonald, a negligence claim would have been appropriate . . . It is the jury's role (or the judge's in a bench trial) to establish what occurred and then apply the correct legal theory to arrive at a verdict.

*Ryan*, 425 P.3d at 238.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**2.      The City of Chandler is vicariously liable for Dever's assault and battery or negligence.**

The City of Chandler claims it is not vicariously liable for Dever's assault and battery because his conduct was not the "actual cause or the legal cause" of her death. *See* Dkt. 309, p. 11. Under Arizona law, "[t]he proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson*, 789 P.2d at 1047. "The defendant's act or omission need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." *Id.* (quoting *Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983)). Causation is ordinarily a question of fact for the jury, and the plaintiff "need only present probable facts from which the causal relationship may be inferred." *Id.*

Plaintiff has presented more than sufficient facts showing Dever's action was a link in the causal chain that led to S.L.'s death. Dever was responsible for initiating the containment and had the ability to call it off. PCSOF, ¶¶ 30, 91-92. If he had not initiated the containment, the Corolla and its occupants would have left the apartment parking lot unharmed, and no shooting would have occurred at that time. The Officer Defendants could have tracked Pequeño through his cell phone location and apprehended him at a time when he was alone, and S.L. would still be alive today. A reasonable jury can certainly infer that Dever's action contributed to S.L.'s death and that her death would not have occurred but for that conduct." *Robertson*, 789 P.2d at 1047.

**3.      The City of Chandler is not entitled to summary judgment on Plaintiff's wrongful death claim based on Chandler's negligence or gross negligence.**

**a.      There are disputed issues of fact regarding whether the City was negligent or grossly negligent in training or supervising Dever with respect to his work on the Task Force.**

"To prevail on a negligent training claim, a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a

plaintiff's injuries." *Guerra v. State*, 234 Ariz. 482, 489–90, ¶ 30, 323 P.3d 765, 772–73 (App. 2014), *vacated on other grounds,* 237 Ariz. 183, ¶ 30, 348 P.3d 423 (2015). A claim for negligent supervision requires the plaintiff to demonstrate that an employee of the defendant committed a tort and that the defendant had a reason and opportunity to act, failed to adequately discharge its duty to supervise, and thereby contributed to the cause of the injury. *Kuehn v. Stanley,* 208 Ariz. 124, 130, ¶ 21, 91 P.3d 346, 352 (App. 2004); *Boomer v. Frank,* 196 Ariz. 55, 60, ¶ 21, 993 P.2d 456, 461 (App. 1999).

Dever testified that the City of Chandler trained him that he could use an intermediate level of force, like a vehicle containment, to seize vehicles containing suspects and non-suspects alike, but he was never provided with any training on how to minimize the risk of injury to passengers who were not suspects. PCSOF, ¶ 127. Plaintiff's expert, Scott DeFoe, has criticized the training provided to the Task Force members because it does not appear that any of them received training on specific scenarios the officers were likely to encounter in the field, including situations where innocent passengers were inside a vehicle during a containment. PCSOF, ¶¶ 125-126. This criticism applies equally to the training that Chandler provided to Dever. Accordingly, a jury could find that Chandler's training was negligent, and, because of Dever's responsibility for initiating the containment, that the training was a cause of S.L.'s injury.

With respect to the negligent supervision claim, as discussed above, Dever committed the underlying torts of assault and battery. The City of Chandler had reason and opportunity to act because it had assigned Dever to work on the Task Force since 2016 and knew that he would be involved in the apprehension of violent offenders. However, the City failed to discharge its obligation to supervise him. It is undisputed that Dever rarely reported to his immediate supervisor at Chandler and was not required to inform his supervisor of what he was doing on the Task Force. PCSOF, ¶¶ 46, 128. The City provided no oversight whatsoever, even though it knew or should have known that Dever would be encountering

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

dangerous situations that would endanger civilians. A jury could find that the City's complete lack of supervision contributed to the poorly planned and executed vehicle containment that Dever initiated and therefore contributed to S.L.'s death.

At the pleading stage, Plaintiff pled both negligence and gross negligence as the bases for her wrongful death claim against Chandler. Rule 8(d)(2) of the Federal Rules of Civil Procedure allows a party to plead alternative claims for relief, and Plaintiff did so out of an abundance of caution. It is clear now that ordinary negligence is the appropriate standard because the City of Chandler is not entitled to any defense or immunity under state law that would shield it from liability for negligence. Even if gross negligence were to apply, however, the City would not be entitled to summary judgment on that claim.

A defendant is grossly negligent if he acts or fails to act when he "knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Arizona Dept. of Pub. Safety*, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App. 1991) (citing *Nichols v. Baker,* 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966)). "Gross negligence differs from ordinary negligence in quality and not degree." *Id.* (citing *Kemp v. Pinal County,* 13 Ariz. App. 121, 124, 474 P.2d 840, 843 (1970)). Here, the City of Chandler knew that Dever was working with the Task Force to apprehend violent felons. It trained him to execute vehicle containments with essentially no regard for the safety of innocent passengers. *See* PCSOF, ¶ 127. The City knew or should have known that Dever would inevitably encounter an innocent passenger during a containment and that its poor training and lack of supervision would create an unreasonable risk of harm to that passenger. Because of the inherently violent nature of the vehicle containment technique, the City knew or should have known that there was a high probability that substantial harm would result to any passenger trapped in a vehicle during a containment. *See* PCSOF, ¶¶ 69-70, 127.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

b.    **The City of Chandler owes a duty of care to members of the public who are seized by its officers.**

The Court should reject the City of Chandler's argument that it owed no duty of care to S.L. "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Gipson v. Kasey*, 214 Ariz. 141, 145, ¶ 18, 150 P.3d 228, 232 (2007) (citing *Stanley v. McCarver,* 208 Ariz. 219, 221 ¶ 7, 92 P.3d 849, 851 (2004)). "A special or direct relationship, however, is not essential in order for there to be a duty of care." *Id.*

Although police departments and municipalities are not "general insurer[s] of safety" for all citizens, they do owe a duty of reasonable care to those individuals who are seized or apprehended by their police officers. *Vasquez v. State*, 220 Ariz. 304, 313, ¶ 29, 206 P.3d 753, 762 (App. 2008). "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts § 314A(4). *See also Frausto v. Dep't of California Highway Patrol*, 53 Cal. App. 5th 973, 993, 267 Cal. Rptr. 3d 889, 906 (2020) ("Once in custody, an arrestee is vulnerable, dependent, subject to the control of the officer and unable to attend to his or her own medical needs. Due to this special relationship, the officer owes a duty of reasonable care to the arrestee.").

The City of Chandler owed a duty of care to S.L. because its detective initiated and executed a vehicle containment that seized S.L. and terminated her freedom of movement. Dever's action deprived S.L. of her ability to protect herself or remove herself from the situation. A duty of care exists by virtue of that custodial relationship, and the City and Dever were required to exercise reasonable care for her safety.

c.    **A reasonable jury can conclude that the City's breach of its duty of care was a proximate cause of S.L.'s death.**

A reasonable jury could find that the City of Chandler's negligent training and supervision of Dever was one link in the causal chain that resulted in S.L.'s death. The jury could reasonably conclude that the containment and subsequent shooting would not have

occurred if Dever had been properly supervised or had been trained to consider and minimize the risk of harm to passengers during a vehicle containment. Had he received such training, he may have called off the containment, declined to initiate it, or at the very least may have suggested ways to minimize the risk to S.L. Because there are "probable facts from which the causal relationship reasonably may be inferred," summary judgment is not appropriate. *Robertson*, 789 P.2d at 1047.

> ### 4. The Chandler Defendants are not entitled to statutory defenses and presumptions under A.R.S. §§ 12-711, 12-712, 12-716, 13-404, 13-405, 13-406, 13-409, 13-411, or 13-413.

The Chandler Defendants claim that they and the Mesa Defendants are entitled to certain defenses or presumptions under state law criminal act, intoxication, and justification statutes. Plaintiff fully incorporates her Motion for Partial Summary Judgment (Dkt. 303) and all arguments asserted therein with respect to these issues.

The Chandler Defendants claim they should be afforded protections under these statutes because Pequeño was allegedly under the influence of illicit drugs and was fleeing from a crime he committed earlier in the day and because the Officer Defendants' use of deadly and non-deadly force with respect to Pequeño was allegedly justified. *See* Dkt. 309, pp. 20-21. This argument fails because the express language of these statutes make clear that they do not permit a defendant to claim that the actions of one person (Pequeño) justify using force against another person (S.L.).

A.R.S. §§ 13-404 through 13-411 define circumstances under which a use of force may be legally justified under Arizona law. Section 13-413 provides an affirmative defense from civil liability "for engaging in conduct otherwise justified pursuant to the provisions of this chapter." In this civil case, Defendants have the burden of proving justification. *Pfeil v. Smith*, 183 Ariz. 63, 65, 900 P.2d 12, 14 (App. 1995). Defendants cannot meet their burden under any of the justification statutes because (a) it is undisputed that S.L. did nothing to justify any use of force against her and (b) because the language of the statutes does not permit Defendants to justify using force against S.L. based on the conduct of Pequeño.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Similarly, the "intoxication" defense under A.R.S. § 12-711 and the "criminal act" defenses under A.R.S. 12-712 and 12-716 provide defenses or presumptions in favor of a defendant if the defendant proves that decedent's (in this case, S.L.'s) injury occurred while the decedent was intoxicated or was actively committing, attempting to commit, or fleeing after having committed a crime. There is no evidence to support any of these defenses. *See* Plaintiff's Motion for Partial Summary Judgment, Dkt. 303, pp. 9-14.

> **5.** **There are facts supporting joint and several liability because the Officer Defendants knowingly agreed to commit a battery when they decided to execute the vehicle containment.**

Joint and several liability has been abolished in Arizona except in narrow circumstances. *See* A.R.S. § 12-2506(D). "[A] party is responsible for the fault of another person, or for payment of the proportionate share of another person," if "both the party and the other person were acting in concert." A.R.S. § 12-2506(D)(1). As Defendants point out, "acting in concert" is defined by statute as "entering into a conscious agreement to pursue a common plan or design to commit an intentional tort and actively taking part in that intentional tort." A.R.S. § 12-2506(D)(1). Whether parties were "acting in concert" is generally a question of fact for the jury. *See Chappell v. Wenholz*, 226 Ariz. 309, 312, ¶ 13, 247 P.3d 192, 195 (App. 2011) (holding there was sufficient evidence for a jury to find that fistfight participants knowingly agreed to commit a battery where their agreement could be implied by their conduct of collectively joining in the fight).

Dever was acting in concert with the other Officer Defendants because they had a conscious agreement to commit the intentional tort of battery by ramming and trapping the Corolla and its occupants. PCSOF, ¶¶ 69, 74, 87. They all agreed to perform the containment, which is in essence an intentional car wreck, and Dever even volunteered to perform the front block position. PCSOF, ¶¶ 74, 76. They all knew that by executing the containment, S.L. would be trapped inside for the "shootout" they expected to occur. PCSOF, ¶ 87.

There is no question that Dever "actively [took] part in that intentional tort." A.R.S. § 12-2506(F)(1). He was responsible for initiating the containment. He gave the command

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

for other officers to "move" over the radio, and he began the containment by reversing his truck into the front of the Corolla. PCSOF, ¶¶ 91-92. While he maintained his truck in contact with the Corolla and kept it pinned in, other officers began to fire their weapons at the people trapped inside. *See* PCSOF, ¶¶ 32. His active participation is undeniable.

### B.   Dever is not entitled to qualified immunity on the Fourth Amendment claim (Count Two).

#### 1.   Plaintiff's claim that law-enforcement officers used excessive force to effect the seizure of S.L. is governed by the Fourth Amendment's reasonableness standard.

Dever claims that he and the other Officer Defendants had "legal authority" to seize the Corolla, that this was a "mundane" traffic stop, and that they would have been within the bounds of the Constitution to ask the "passengers to get out of the car pending completion of the stop." *See* Dkt. 309, p. 22-23. This is truly disconnected from the reality of what occurred when the Officer Defendants violently rammed and pinned the Corolla without any warning to its occupants and within seconds began firing their guns into the car. There was nothing "mundane" about this traffic stop. They never asked S.L. to get out of the Corolla.

Because the Estate of S.L.'s Fourth Amendment claim alleges that the Officer Defendants used excessive force to effect her seizure, the reasonableness of the seizure is governed by the Fourth Amendment's objective reasonableness standard. *See Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)). The reasonableness of the seizure cannot be evaluated apart from the excessive force used to effect it. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 6 (1985)). The Fourth Amendment's objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

arrest or attempting to evade arrest by flight." *Id.* Other relevant factors include the availability of less intrusive alternatives to the force employed and whether the officers gave warnings prior to the use of force. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).

> **2.** **A reasonable jury could find that the use of the vehicle containment technique was objectively unreasonable and violated the Fourth Amendment.**

In *Cunningham v. Gates*, 229 F.3d 1271, 1278 (9th Cir. 2000), *as amended* (Oct. 31, 2000), the Ninth Circuit heard the consolidated appeals of cases alleging in part that Los Angeles Police Department detectives' use of a vehicle "jamming" technique was an excessive use of force under the Fourth Amendment. The detectives typically followed a pattern of conduct where they would surveil armed robbers, lie in wait as the robberies were committed, execute the "jamming technique" to pin the robbers' car into a confined space to prevent it from leaving, and then open fire into the vehicle. *Id.* at 1278-80. In determining whether the non-shooting officers who participated in the "jamming" technique were entitled to qualified immunity, the court noted its concern that the technique "needlessly or unreasonably creates a dangerous situation necessitating an escalation in the use of force" but held that it was not "clearly established at the time of the shootings that the 'jamming' technique was an unreasonable use of force." *Id.* at 1291, n. 23.

In applying the *Graham* factors to this case, a jury could conclude that Dever violated the Fourth Amendment when he initiated and executed the vehicle containment. While Pequeño's assault and attempted kidnapping of his girlfriend were undoubtedly serious, the other *Graham* factors weigh against the reasonableness of the containment. Neither Pequeño, S.L., nor Damien were doing anything at the time that posed an "immediate threat" to the officers or others. *See Graham*, 490 U.S. at 396. They were not "actively resisting arrest or attempting to evade arrest by flight." *See id.* The Officer Defendants did not give any warnings prior to executing the containment, and Pequeño, S.L., and Damien did not even know the Officers had tracked them to the apartment complex in their unmarked police

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

vehicles. *See* PCSOF, ¶¶ 79, 94. This situation is distinctly different from *Cunningham*, where detectives used the jamming technique to stop armed suspects who were "in the midst" of committing dangerous felonies. *Cunningham*, 229 F.3d at 1291.

The availability of less intrusive alternatives is also highly relevant. Dever and the other Officer Defendants had been tracking Pequeño's cell phone, could have continued to surveil him, and could have apprehended him at a time when he was alone. *See* PCSOF, ¶ 68. This alternative was available and likely would have resulted in Pequeño's apprehension in a fairly short amount of time without endangering two innocent passengers. Although the government interest in taking Pequeño into custody may have been significant, it could have been accomplished without the obvious risk of trapping S.L. in the car for a "shootout."

There are also significant questions of fact regarding the reasonableness of the Officer Defendants' mistaken belief that Pequeño had a gun. Where an officer's use of force results from his mistaken belief that a suspect was armed, the relevant inquiry is "whether a reasonable officer would have or *should* have accurately perceived that fact." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (citing *Jensen v. City of Oxnard,* 145 F.3d 1078, 1086 (9th Cir. 1998) (emphasis in original). "Plainly, not all mistakes—even honest ones—are objectively reasonable." *Floyd v. City of Detroit*, 518 F.3d 398, 408 (6th Cir. 2008) (citing *Dawkins v. Graham,* 50 F.3d 532, 534 (8th Cir. 1995) ("[T]he Fourth Amendment's allowance for officers' honest mistakes is limited to mistakes that are objectively reasonable.")). An officer's "honest but mistaken belief thus does little to resolve the key issue of whether his belief and subsequent actions were nonetheless objectively unreasonable." *Id.*; *see also Duenez v. City of Manteca*, 2013 WL 6816375, at *2 (E.D. Cal. Dec. 23, 2013) (noting that a jury could find the defendant officer "violated the decedent's clearly established Fourth Amendment rights by seizing an unarmed, non-dangerous civilian" when the officer shot and killed a man whom the officer mistakenly believed was carrying a knife).

Here, the jury could find that Dever's mistaken belief about Pequeño's alleged possession of the Glock .380 was not reasonable. Dever was with Pezzelle and other

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Chandler officers at Frances Gomez's house after Pequeño took her Corolla and left. Frances testified that she repeatedly told Pezzelle that Pequeño no longer had the gun he had stolen from her and that he had not left the house with a gun that day. *See* PCSOF, ¶¶ 57-59. If the jury finds that Dever and Pezzelle had no reasonable belief that Pequeño had a gun, it should also find that the vehicle containment technique was unreasonable and excessive.

### 3. Dever was an integral participant in the violation of S.L.'s Fourth Amendment rights.

In *Boyd v. Benton County*, 374 F.3d 773, 779 (9th Cir. 2004), the Ninth Circuit found that officers used excessive force and violated the Fourth Amendment when they deployed a flash-bang device by throwing it "blind" into room occupied by innocent bystanders without careful consideration of alternatives and appropriate measures to reduce risk of injury. The court went on to conclude that each officer involved in the search operation where the flash-bang was used was an "integral participant" for the purposes of the plaintiff's civil rights lawsuit. The court explained:

> "[I]ntegral participation" does not require that each officer's actions themselves rise to the level of a constitutional violation. For example, in *James ex rel. James v. Sadler,* 909 F.2d 834 (5th Cir. 1990), cited with approval by *Chuman,* the court held that officers who provided armed backup during an unconstitutional search were "integral" to that search, and were therefore participants rather than mere bystanders. *Id.* at 837. Additionally, in *Melear* itself, the Fifth Circuit held that an officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can nevertheless be a "full, active participant" in the search.

> The facts of this case clearly support a finding that each officer involved in the search operation was an "integral participant." First, as in *James* and *Melear*, the officers in this case stood armed behind Ellison while he reached into the doorway and deployed the flash-bang. Second, the use of the flash-bang was part of the search operation in which every officer participated in some meaningful way. Third, every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed. Therefore, under the integral participation analysis adopted in *Chuman,* each defendant may be held liable for the Fourth Amendment violation outlined above.

1    *Id.* at 780.

2         Dever's claim that he was not an integral participant in the shooting of S.L. because,

3    after he initiated the containment, he crouched down in his seat and made himself as small

4    as possible is unpersuasive. His participation was even more fundamental than the armed

5    officers who stood guard outside in *Boyd*. Dever initiated and gave the command to

6    commence the vehicle containment. PCSOF, ¶¶ 91-92. The shooting started almost

7    immediately, and Dever maintained his truck in contact with front of the Corolla for the

8    entire duration of the shooting. *See* PCSOF, ¶ 32. He kept the Corolla pinned so the

9    occupants had no means to escape. Dever and the other Officer Defendants all participated

10   in the apprehension of Pequeño in a meaningful way. They discussed how to arrest him, and

11   they all decided on the vehicle containment. *See* PCSOF, ¶¶ 68, 73-74, 76. They were all

12   aware of the decision to use the vehicle containment, did not object to it, and executed the

13   containment with the knowledge that S.L. would be trapped inside for the anticipated

14   "shootout." *See* PCSOF, ¶¶ 73, 87. The obvious inference from the fact that Dever crouched

15   down in his seat is that he knew a shooting was about to occur and did not want to be caught

16   in fire. His participation was integral, and he can be held liable for the Fourth Amendment

17   violation to the same extent as any other Officer Defendant.

18            **4.    There are significant questions of fact regarding whether Pezzelle,**
              **Pollard, and Baker's use of deadly force was reasonable.**

19

20        There are significant, disputed factual issues which preclude summary judgment on

21   whether the Officer Defendants' use of deadly force was reasonable. Based on the testimony

22   of non-party witnesses Frances Gomez and Damien Sandoval Rosa, the jury could find:

23        1)   The bullet holes in the rear window of the Corolla show that Pezzelle intentionally

24             targeted Sariah Lane (see PCSOF, ¶ 112);

25        2)   Pezzelle knew Pequeño did not have Gomez's gun and lied to other Officer

26             Defendants about it (*see* PCSOF, ¶¶ 57-61);

27

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

3) Officer Defendants lied about Pequeño trying to "ram" his way out of the containment based on the contradictory testimony of other officers and the testimony of Damien Sandoval-Rosa (*see* PCSOF, ¶¶ 40-41, 97-98, 111); and

4) Officer Defendants lied about Pequeño's movements inside the Corolla based on the contradictory testimony of other officers and the testimony of Damien Sandoval-Rosa (*see* PCSOF, ¶¶ 38-39, 42-43, 106-110).

In determining whether an officer's use of force violated the plaintiff's Fourth Amendment rights, courts look to whether the officer's actions were "objectively reasonable" under the circumstances, without regard to their underlying intent or motivation. *Graham*, 490 U.S. at 397. In cases involving the use of deadly force, "the Supreme Court has crafted a more definitive rule, allowing an officer to use deadly force only if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Villanueva*, 986 F.3d at 1169 (quoting *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020)) (quotation marks omitted). **"A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."** *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (emphasis added).

In *Villanueva v. California*, 986 F.3d 1158, 1166 (9th Cir. 2021), the Ninth Circuit held that a passenger who was not intentionally targeted by police officers had a cognizable Fourth Amendment interest as a result of being injured when the officers shot at the vehicle's driver. In July 2016, police officers in unmarked vehicles attempted a traffic stop on a truck for engaging in illegal street racing. *Id.* at 1162. The truck's driver, Villanueva, fled from the unmarked vehicles. A passenger, Orozco, was in the truck with him. *See id.* The police chased the truck down a dead-end street. *Id.* at 1163. As Villanueva slowly made a three-point turn, the officers got out of their vehicles and drew their firearms. *Id.* Villanueva completed the three-point turn so that the front of his truck was generally facing the officers, who were about 15 to 20 feet away. *Id.* The officers then opened fire on the vehicle, killing Villanueva and injuring Orozco. *Id.*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

In affirming the district court's ruling that Orozco had Fourth Amendment standing, the Ninth Circuit emphasized that a person is "seized" under the Fourth Amendment when there is a governmental termination of the person's freedom of movement "through means intentionally applied." *Id.* at 1166 (9th Cir. 2021) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989)). Even though the defendants did not intend to shoot Orozco and did not even know he was a passenger, his detention was made "through means intentionally applied" to stop the truck, a Fourth Amendment seizure had occurred, and the officers' subjective intent was irrelevant. *Id.* at 1166-68 (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). *See also Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir. 2003) ("[B]ecause he did not intend to shoot [the passenger], [the officer] contends that [the passenger] did not suffer a Fourth Amendment seizure. We disagree.").

After determining that the passenger had Fourth Amendment standing to assert a claim, the Ninth Circuit addressed whether the officers' use of deadly force was reasonable as a matter of law. *Villanueva*, 986 F.3d at 1169–70. The court noted that a moving vehicle can pose a threat of serious harm, "but only if someone is at risk of being struck by it." *Id.* at 1170 (quoting *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020)). Thus, the use of deadly force to stop a recklessly speeding vehicle during a dangerous, high-speed car chase is generally reasonable under the Fourth Amendment. *Id.* (citing *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)).

On the other hand, courts have consistently found the use of deadly force against a stopped or slow-moving vehicle unreasonable if "the officers could have easily stepped out of the vehicle's path to avoid danger" or the subject was not aggressively engaging in the "attempted or actual acceleration of the vehicle" in the officers' direction. *Id.* (citing *Orn*, 949 F.3d at 1175). In *Villanueva*, the surviving passenger, Orozco, attested that the driver had come to a complete stop before making a controlled three-point turn, was driving very slowly, and that no officers were in the truck's path. *See id.* at 1171-72. Because the officers "could have simply moved away to avoid injury" and therefore lacked an objectively

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

reasonable basis to fear for their own safety, the court affirmed the district court's denial of the officers' motion for summary judgment. *Id.* at 1171.

In this case, the Toyota Corolla was completely stopped before the Officers began firing into the Corolla. PCSOF, ¶¶ 97-98, 111. Damien testified that Pequeño had placed the car in park and raised his hands before the Officers fired. PCSOF, ¶¶ 97-98, 106. The Officers agreed that the vehicle containment was so secure and successful that the car was completely immobilized, and all its occupants were trapped inside. PCSOF, ¶ 97. Pequeño was not attempting to "ram" his way out of the containment and was not accelerating toward any officer. *See* PCSOF, ¶¶ 40-41, 97-98, 111. The Corolla did not pose any threat to the safety of the Officers.

Moreover, a reasonable officer in Defendant Pezzelle's position would, or should, have known that Pequeño did *not* have a gun when Pezzelle fired into the Toyota Corolla. Based on Gomez's testimony, Pezzelle knew that Pequeño did not have a gun. PCSOF, ¶¶ 57-59. Gomez had repeatedly told Pezzelle that Pequeño no longer had the gun he had stolen from her and that he had not left the house with a gun that day. PCSOF, ¶ 59. Second, in the moments before the shooting, Pezzelle watched as Pequeño leaned to his right, over the center console, presumably in response to the less lethal rounds being fired through the driver's side window or because he had already been shot. *See* PCSOF, ¶ 109. Pezzelle saw Pequeño raise his hands, which were empty. PCSOF, ¶ 110. He could see that Pequeño was not holding a gun. *Id.* No reasonable officer would have perceived that Pequeño posed an immediate risk of serious physical harm to others as he sat trapped in the immobilized Toyota Corolla with his hands raised. Because a jury could reasonably find that the Officer Defendants' use of deadly force was excessive and violated S.L.'s Fourth Amendment rights, summary judgment should be denied.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**5.** **S.L.'s right to be free from excessive force as a passenger in a vehicle that posed no risk to police was clearly established long before April 20, 2017.**

Resolving a claim of qualified immunity generally involves two questions: whether officers violated a plaintiff's constitutional rights, and, if so, whether the right in question was clearly established. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). The "requirement that the plaintiff's asserted right be clearly established 'does not mean that the very action at issue must have been held unlawful before qualified immunity is shed.'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007) (quoting *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004)). Police officers "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (providing that courts "must not allow an overly generalized or excessively specific construction of the right" to guide this analysis).

Long before the April 20, 2017 shooting of S.L., "[i]t was clearly established that officers are not entitled to qualified immunity for shooting at an individual in a fleeing vehicle that does not pose a danger to them or to the public." *Stoddard-Nunez v. City of Hayward*, 817 Fed. Appx. 375, 379 (9th Cir. 2020) (citing *Acosta v. City & County of San Francisco*, 83 F.3d 1143, 1146 (9th Cir. 1996), *as amended* (June 18, 1996)). *Stoddard-Nunez* involved a Fourth Amendment claim brought on behalf of a passenger who was killed when an officer fired into the side and rear of a slowly moving vehicle. *See id.* at 377-78. In both *Stoddard-Nunez* and *Villanueva*, the Ninth Circuit found that the law had been clearly established on this issue since the 1996 *Acosta* decision. *Id.* at 378; *Villanueva*, 986 F.3d at 1171–72.

In *Acosta*, a police officer was chasing two men he believed had stolen a purse. *Acosta*, 83 F.3d at 1144. The men got into a waiting, stopped car. As the car began "moving or rolling very slowly from a standstill," the officer, who was standing more to the side of the car than the center, fired his gun into the car, shooting and killing the driver. *Id.* at 1147. The Ninth Circuit held that the officer's deadly force was excessive and violated the Fourth

Amendment because "it was not reasonable for him to believe that [the driver] posed a threat of great bodily injury or harm to him or to anyone else." *Id.* at 1148. *See also Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020) ("By the time of the shooting in October 2011, at least seven circuits had held that an officer lacks an objectively reasonable basis for believing that his own safety is at risk when firing into the side or rear of a vehicle moving away from him."); *Longoria v. Pinal County*, 873 F.3d 699, 709–10 (9th Cir. 2017) (quoting *Torres*, 648 F.3d at 1128) ("[F]ew things in our case law are as clearly established as the principle that an officer may not 'seize an unarmed, nondangerous suspect by shooting him dead' in the absence of 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'").

There is no question that the Officer Defendants were on notice that it was unlawful for them to use deadly force against the occupants of a vehicle when the vehicle was not moving, the occupants were unarmed, and neither the vehicle nor the occupants posed a threat of serious physical harm to the Officers or others.

**C.     Dever is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment familial association claim (Count Four) because he initiated the vehicle containment knowing that S.L. would be trapped in the Corolla for the anticipated "shootout."**

The Ninth Circuit has recognized that parents have a Fourteenth Amendment substantive due process interest in the companionship and society of their children. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). To prevail on a Fourteenth Amendment familial association claim, the plaintiff must prove that the officers' use of force "shocked the conscience." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (quoting *Porter v. Osborn,* 546 F.3d 1131, 1137 (9th Cir. 2008)). In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Wilkinson*, 610 F.3d at 554 (quoting *Porter*, 546 F.3d at 1137).

> Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

> snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. For example, a purpose to harm might be found where an officer uses force to bully a suspect or "get even."

*Id.* (finding that the "purpose to harm" standard was appropriate where officers shot at a suspect who, within seconds, accelerated his vehicle at a high rate of speed toward officers who were on foot).

Whether Dever's conduct shocked the conscience is governed by the "deliberate indifference" standard, not the "purpose to harm" standard. The Officer Defendants' "actual deliberation" was not only practical, but they did in fact deliberate about apprehending Pequeño while he, S.L., and Damien were inside the apartment for a considerable period of time. PCSOF, ¶ 68. The Officer Defendants, including Dever, discussed arresting Pequeño. They were already tracking his cell phone and knew they could follow him to another location. *Id.* There were no exigent circumstances that required his immediate apprehension while S.L. and Damien were in the car with him. *See* PCSOF, ¶ 75.

But most importantly, Dever and the other Officer Defendants knew that by initiating the vehicle containment, S.L. would be trapped inside the Corolla with a person whom they allegedly believed had a gun and would engage in a "shootout" with police. PCSOF, ¶ 73. They never discussed ways to minimize the risk to her, even though their policies required them to. PCSOF, ¶¶ 71, 77. Because Dever had actual knowledge of a substantial risk of harm to S.L. and disregarded that risk when he initiated the containment, a jury could easily find that he was deliberately indifferent to S.L.'s and Plaintiff's rights and that his conduct shocked the conscience. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (noting that to establish deliberate indifference, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.").

### D. Chandler is not entitled to summary judgment on Plaintiff's *Monell* claim (Count Six).

A municipality is liable under 42 U.S.C. § 1983 when the municipality's widespread policies or customs amount to deliberate indifference and are the moving force behind a

municipal employee's constitutional violation. *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Gibson v. County of Washoe,* 290 F.3d 1175, 1193–94 (9th Cir. 2002), *cert. denied,* 537 U.S. 1106 (2003)); *see also Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). For a policy or custom to be the moving force behind the deprivation of a constitutional right, there must be a direct causal link between the municipal action and the deprivation of federal rights. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1078–79 (9th Cir. 2016) (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404–05 (1997)).

A municipality is liable under § 1983 for the failure to train its police officers if (1) "the existing training program" is inadequate "in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." *Johnson v. Shasta County*, 83 F. Supp. 3d 918, 932 (E.D. Cal. 2015) (quoting *Merritt v. Cnty. of L.A.,* 875 F.2d 765, 770 (9th Cir. 1989)). Deliberate indifference exists where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Castro*, 833 F.3d at 1076 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *Id.* (quoting *City of Canton*, 489 U.S. at 396) (emphasis in original).

A pattern of similar constitutional violations by untrained, or improperly trained, employees is ordinarily necessary to demonstrate deliberate indifference for purposes of a municipality's failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). The Supreme Court, however, has provided that a pattern of violations may not be required under

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

circumstances where the need for training is "so obvious" that the failure to provide it could properly be characterized as deliberate indifference. *City of Canton*, 489 U.S. at 390, n. 10.

> [In *Canton*,] [t]he Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights.
>
> * * * *
>
> There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training.

*Connick*, 563 U.S. at 63–64.

Here, Chandler was deliberately indifferent in its training of Dever because the City trained him to use vehicle containments to seize suspects and non-suspects alike but failed to provide any training on how to minimize the risks to non-suspect passengers. PCSOF, ¶ 127. The City allowed Dever to work with the Task Force but did not supervise him and did not require him to keep his immediate supervisor, Chandler Sergeant Rowton, apprised of what he was doing. PCSOF, ¶ 128. The Task Force's objective was the apprehension of violent felony offenders. It was therefore entirely predictable—and virtually certain—that Dever would encounter situations where innocent bystanders were placed in harm's way or where Dever would have to make decisions about whether to use a vehicle containment to apprehend a violent offender along with others who were not suspected of any wrongdoing.

It is obvious and apparent that training officers to use forceful, intentional car wrecks to trap innocent civilians in vehicles with suspects who are presumed to be violent would

result in the "highly predictable consequence" of constitutional violations. *See Connick*, 563 U.S. at 63–64 (citing *City of Canton*, 489 U.S. at 395). Like the Supreme Court's hypothetical situation in *Canton* where a city failed to train its officers on the use of deadly force, Chandler's training failed to provide Dever with the tools necessary to engage with the Task Force in a way that did not violate others' constitutional rights. Because of the predictability with which Task Force officers were sure to encounter such situations, Chandler's training is properly characterized as patently inadequate and deliberately indifferent. *See id.; Johnson*, 83 F. Supp. 3d at 932.

Chandler's constitutionally deficient training and supervision of Dever was an actual cause of S.L.'s and Plaintiff's harm and a moving force behind the constitutional violations. A reasonable jury could conclude that, if Dever had been properly trained, he would probably have called off the containment when he realized S.L. had gotten into the Corolla with Pequeño or, at the very least, would have considered ways to minimize the risk to her. S.L. would not have been trapped in the Corolla for the Officer Defendants' "shootout" and the constitutional injury would not have occurred.

### E. Dever is not entitled to summary judgment on Plaintiff's claim for punitive damages.

A jury may assess punitive damages[2] against a defendant on a § 1983 excessive force claim when the defendant's conduct involved reckless or callous indifference to the constitutional rights of others, was driven by evil motive or intent, or was malicious, wanton, or oppressive. *Dang v. Cross*, 422 F.3d 800, 808 (9th Cir. 2005) (citing *McKinley v. Trattles*, 732 F.2d 1320 (7th Cir. 1984)). There is more than sufficient evidence in this case for a jury to conclude that Dever acted with reckless or callous disregard of S.L.'s Fourth Amendment rights or even that he acted maliciously, oppressively, or with an evil mind.

---

[2]    Contrary to Defendants' assertion, Plaintiff is not seeking punitive damages against Dever on any state law claim. Plaintiff's claims against Dever, including her punitive damages claim, are brought under 42 U.S.C. § 1983.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Dever volunteered to perform the front block of the containment, and he knew this meant he was responsible for initiating the seizure of the Corolla and its occupants. PCSOF, ¶¶ 76, 91-92. He knew that by initiating and executing the containment, S.L. would be trapped inside the Corolla with a person that he and the other Officer Defendants believed was going to "shoot it out" with the police. PCSOF, ¶ 87. He knew that S.L. was innocent, had not committed any crime, and was not a threat to anyone, and he knew she would be trapped in the Corolla during the "shootout." *See* PCSOF, ¶¶ 73, 81-85. A reasonable jury could find that trapping an innocent, unarmed girl in a car for a "shootout" with police is strong evidence of a reckless and callous disregard for that individual's right to be free of unreasonable seizures and excessive force. Dever is not entitled to summary judgment on this issue.

### III.     Conclusion

Based on the foregoing, Plaintiff respectfully requests that the Court deny the Chandler Defendants' Motion for Summary Judgment.

RESPECTFULLY SUBMITTED: May 21, 2021

ROBBINS & CURTIN, p.l.l.c.

By:     /s/ Jesse M. Showalter
        Joel B. Robbins
        Jesse M. Showalter
        301 E. Bethany Home Road, Ste. B-100
        Phoenix, Arizona 85012
        *Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

John P. Torgenson, Esq.
Torgenson Law
333 W. Roosevelt Street
Phoenix, Arizona 85003
jtorgenson@torgensonlaw.com
*Co-Counsel for Plaintiff*

John T. Masterson, Esq.
Joseph J. Popolizio, Esq.
Justin M. Ackerman, Esq.
Ian C. Beck, Esq.
Jones, Skelton & Hochuli, P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com
ibeck@jshfirm.com
*Attorneys for Mesa Defendants*

J. Randall Jue, Esq.
Chandler City Attorney's Office
P.O. Box 4008, MS602
Chandler, Arizona 85244-4008
randy.jue@chandleraz.gov
*Attorneys for Chandler Defendants*

/s/ Julie W. Molera

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267